MIDWEST PETROLEUM CO., Oliver Doerflinger Oil Co., Inc., Joe Rayl, Inc., Saveway Oil Co., McLeroy Oil Co. of Independence, Inc., Malone Oil Co., Sunglo, Inc., Palmer Oil Co., Dal-Rich Oil Company, Carr Oil Co., Inc., Tommy Gage Oil Co., Felts Company, Inc., Hooper Oil Co., Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF ENERGY, Donald Hodel, Secretary, United States Department of Energy, and Milton C. Lorenz, Special Counsel for the United States Department of Energy, American Petrofina Company, Inc., Defendants-Appellees.

No. 8–16.

Temporary Emergency Court of Appeals.

Argued Jan. 26, 1985.

Decided March 25, 1985.

Donald H. Grissom, Austin, Texas, for plaintiffs-appellants.

Richard Greenberg, U.S. Dept. of Justice, Civ. Div., Washington, D.C., argued, with whom on brief were Stephen E. Hart, Charles E. Davidow, of Wilmer, Cutler & Pickering, argued for American Petrofina, with whom on brief was Jay F. Lapin, of the same firm.

Before JAMESON, GRANT and PECK, Judges.

JOHN W. PECK, Judge.

This case is before the court upon an appeal from the order of the district court granting Appellees' motions to dismiss, or in the alternative, for summary judgment. Appellants are independent jobber-marketers and purchaser-resellers of various petroleum products. Appellee American Petrofina, Inc. ("Fina"), a producer and refiner of crude oil, purportedly sold its product to each of the Appellants during the period 1974–81. During this period, Fina was subject to a Department of Energy ("DOE") audit regarding Fina's compliance with the mandatory allocation and price regulations promulgated under the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751, *et seq.* (EPAA). In January 1981, DOE issued 7 Notices of Probable Violations (NOPV's) to Fina. The NOPV's identified possible overcharges in sales of products throughout the period 1973–79. DOE and Fina agreed to enter into a com-

prehensive settlement. Without any finding that Fina was in fact liable for any overcharges, DOE and Fina agreed to the Consent Order at issue in this case. The Consent Order was executed on March 2, 1982. Under the proposed Consent Order, Fina would pay $14 million on a pro rata basis to its customers that had purchased motor gasoline in 1974.

Notice of the proposed Consent Order, published for comment in the Federal Register on March 8, 1982, provided in part:

> While a number of challenges to Fina's application of the regulations resulted from this audit, DOE has no reason to believe, based upon the intensified audit which preceded the agreement to enter into this Consent Order, that Fina would be liable for overcharges in sales of petroleum products after 1974. However, it was DOE's preliminary view that overcharges were identified in calendar year 1974.

The substance of this statement was contained in a press release and correspondence sent to Appellants by Fina. The Consent Order stated in part:

> [d]uring the course of the audit of Fina, DOE considered numerous questions and took various informal and formal administrative actions, including the issuance of issue letters, Notices of Probable Violations (NOPV's) and a Notice of Proposed Disallowance (NOPD).

Notice of adoption of the order by DOE, published in the Federal Register on May 14, 1982, provided in part:

> Claimants who do not believe that the settlement offered adequately satisfies their claims need not accept the offer and are free to pursue their claims in a private action against the company.... [T]he DOE believes that the remedies set forth in the Consent Order adequately resolves issues of Fina's compliance with the allocation and price regulations. Therefore, the funds generated by the Consent Order must be considered in settlement of all claims. This position is fully consistent with the scope of the Consent Order. Moreover, as discussed

above, Claimants may reject the offer contained in the Consent Order and pursue their own private right of action.

Each of the Appellants in this action accepted the settlement, signed a release giving up its right to sue separately for alleged overcharges, and received its share of the $14 million. The release reached every action against Fina "arising out of or under Section 210 of the Economic Stabilization Act or the federal petroleum price and allocation regulations" based on any "act, matter, case, statement, conduct, practice or thing whatever made, done or omitted by Fina up to the date hereof...."

In September 1983, Appellants filed the present action seeking to rescind their releases and to recover alleged overcharges for the period after 1974. They alleged that the Consent Order's provision for such releases was unlawful and should be set aside and that they were induced to sign the releases by a fraudulent misrepresentation in the Federal Register notice of March 8, 1982.

The district court held that Appellants lacked standing to challenge the validity of the Consent Order and also dismissed the claim of fraud. The court granted Appellees' motions to dismiss, or alternatively, for summary judgment. For the reasons set forth below, we affirm.

## I. STANDING

Appellants argue that DOE exceeded its authority by entering into a consent order which permitted Fina to condition the payment of the settlement funds to Appellants upon their release of Fina from liability. First, they argue that DOE has a mandatory duty to make unconditional restitution to overcharged parties from consent order monies at the time an order is executed. Second, they assert that the Consent Order improperly commingles administrative and private remedies provided, respectively, under § 209 and § 210 of the Economic Stabilization Act.[1]

To establish standing, appellants must demonstrate that they have " 'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Supreme Court stated that "the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision."

The district court, in finding that Appellants lacked standing to challenge the validity of the Consent Order entered into between DOE and Fina, relied upon *U.S. Oil Company v. Department of Energy,* 510 F.Supp. 910 (E.D.Wis.1981). In that case, three independent gasoline marketers, customers of Koch Refinery, brought an action against DOE and Koch, *inter alia,* seeking declaratory and injunctive relief against DOE to prevent the entry of a proposed consent order between DOE and Koch. Plaintiffs alleged that DOE had violated its own regulations, that the remedial actions provided for in the Consent Order were insufficient, and that DOE had abused its discretion in exempting Koch from a record keeping requirement. The court concluded that the plaintiffs lacked standing to challenge the proposed order because they had shown no injury to themselves.

The district court concluded that the same rationale applied to the present case. The court stated:

At the time the Consent Order was signed, plaintiffs were not in any way restricted from bringing their own civil action against Fina under Section 210.[1] The terms of the Consent Order provided them with an *alternative* option for re-

---

1. Actions by the United States under § 209 of the Act are brought to enforce public rights; § 210 provides for a private cause of action to

recover overcharges in excess of the applicable price regulations.

covery of alleged overcharges, but did not purport to *substitute* this option for other available remedies. The mere fact that the option was not as favorable to plaintiffs as they would have wished (*e.g.,* permitting payment without release of liability), does not mean that they suffered any loss as a result of the Consent Order. The result was still a net gain for the plaintiffs. (Emphasis in original.)

In footnote 1, which accompanies the above-quoted text, the court wrote:

1. Obviously, plaintiffs' rights to bring a Section 210 action are restricted voluntarily by plaintiffs in return for benefits received under the settlement. Since it was not the Consent Order itself that caused the injury, plaintiffs have no standing to challenge the validity of its terms.

Appellants contend that *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), is controlling on the issue of standing. In *Blue Chip Stamps*, the Supreme Court found that the plaintiffs lacked standing to sue for a 10b–5 violation because they had not purchased any of the stock offered for sale pursuant to the terms of a consent decree. Appellants note that the plaintiffs in *Blue Chip Stamps* lacked standing because they did not actually purchase any of the offered stock. Appellants, on the other hand, actually executed a release in favor of Fina and participated in the distribution of the settlement fund; therefore, Appellants reason, they have standing. We do not find Appellants' analogy persuasive. First, Appellants overlook the language of the Supreme Court in *Blue Chip Stamps* that "a well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not party to it even though they were intended to be benefitted by it." 421 U.S. at 750, 95 S.Ct. at 1932. Next, Appellants' reliance on *Blue Chip Stamps* is misplaced because their inability to bring a § 210 action is not because they are bound by the terms of the Consent Order, but because they made a voluntary business decision to sign the re-

leases and accept the benefits of the settlement agreement.

Other courts which have addressed this issue have held that third parties to a DOE consent order lack standing to challenge the substantive provisions of the order. In *Town and Country Markets v. Department of Energy*, 4 Energy Mgmt. (CCH) ¶ 26,351 (D.D.C.1981), *appeal dismissed*, Temp.Emer.Ct.App. No. DC–87 (1983), the plaintiff, a purchaser from OKC Company, challenged the provision of a consent order between OKC and DOE which required that "as a condition to the receipt of funds under the Consent Order, a claimant must waive any other claims it may have against OKC which fall within the scope of the Order." The court held that the plaintiff could not demonstrate that the agreement injured it to any degree that would give it standing to sue. In *Cities Service Co. v. Department of Energy*, 715 F.2d 572 (Temp.Emer. Ct.App.1983), Cities Service appealed from a district court decision denying Cities Service's application to intervene in an action brought by Pennzoil Company against DOE and from an order approving an "Agreed Final Judgment" which settled DOE's counterclaim against Pennzoil. This court affirmed the district court's decision to deny the application to intervene and to dismiss the appeal from the order approving the Agreed Final Judgment, noting ˏthat the outcome of the underlying action did not affect Cities Service's private right to sue under § 210.

Based upon the above analysis, we conclude that the district court properly held that Appellants lacked standing to challenge the validity of the Consent Order.

## II. VALIDITY OF RELEASES

█ Appellants further allege that, assuming validity of the Consent Order, the releases should be set aside because they were obtained as a result of fraudulent misrepresentations. Specifically, Appellants allege that the statement in the Federal Register notice of March 8, 1982 that "DOE has no reason to believe, based upon

the intensified audit which preceded the agreement to enter into this Consent Order, that Fina would be liable for overcharges in sales of petroleum products after 1974" was intentionally false. Appellants contend that at the time this statement was made, DOE had not only calculated and identified overcharges specifically in the years 1975–79, but had also identified the amount of overcharge per customer.

The district court rejected Appellants' argument on two grounds. First, the court noted that prior to the settlement agreement, DOE had issued NOPV's against Fina. The court found that it was clear from the record that at the time Appellants signed the releases, they had knowledge of the NOPV's and consequently were aware that DOE had some basis for alleging overcharges after 1974. Thus, the court concluded, it could not be said that when Appellants signed the releases, they were unaware of the falsity which they now allege. Because an essential element of misrepresentation is that the party to whom a representation is made must be ignorant of its falsity, the court concluded that Appellants' knowledge of the alleged falsity was sufficient grounds for summary judgment. In the alternative, the district court stated that the alleged misrepresentation by DOE was actually a legal opinion that there was no reason to believe that a prosecution of alleged overcharges after 1974 would be successful. Thus, the court reasoned, based upon the language of the DOE's statement, the representation was not one of material fact, but rather was a legal opinion.

Appellants concede that they had knowledge of the NOPV's prior to signing the releases. They argue, however, that the NOPV's were not made a part of the record, so it is impossible to determine whether the information contained in the NOPV's was sufficient to put Appellants on notice of the alleged falsity of the subsequent representations. Appellants argument overlooks the fact that Fina had presented to the district court, through the affidavit of a Fina executive, that "these NOPV's identified possible overcharges in

sales of motor gasoline during the period 1973–1979." We hold that this uncontroverted statement in the affidavit was sufficient to give notice of the alleged falsity of the subsequent representation in issue. We also hold that the district court concluded that DOE's statement of its belief that Fina would not be liable for overcharges after 1974 was not a material fact upon which Appellants could reasonably rely in executing the releases. Rather, DOE's statement indicated that although the result of DOE's initial audit had resulted in the issuance of NOPV's, DOE's subsequent intensified audit altered DOE's view of the alleged overcharges and, correspondingly, the potential outcome of an enforcement proceeding. We agree with the district court that to find that DOE's statement represents a "material fact" for purposes of fraudulent representation would "open the door to fraud allegations against *any* government enforcement agency which issues an opinion on the legal merits of the case, in the face of any evidence to the contrary."

The district court's second basis for rejecting Appellants' attack on the validity of the releases was that, although Appellants sought to rescind the releases, they failed to tender any of the money received under those contracts. As the district court noted, tender or offer of tender of money received pursuant to a release is a prerequisite to any rescission of that release. *St. Paul Fire & Marine Ins. Co. v. Hundley*, 354 F.Supp. 655, 665 (E.D.Ark.1973). Appellants contend that they were not required to tender the monies received pursuant to the releases due to the fact that they were entitled to the money received as compensation for 1974 overcharges. Appellants adopt the position that the monies they received were therefore *not* consideration for the releases, but represent their respective shares of 1974 overcharges by Fina. This argument, however, rests upon an incorrect characterization of the Consent Order as a final order adjudicating overcharge claims; rather, the Consent Order is a negotiated settlement of a disputed

claim. The record does not support Appellants' contention that the releases only pertain to potential overcharge claims for 1974; at no time did DOE claim, nor did Fina admit, that the $14 million settlement represented 1974 overcharges. Finally, Appellants' argument ignores the plain language of the executed releases, which reached every action against Fina based on any "act, matter, case, statement, conduct, practice or thing whatever made, done or omitted by Fina up to the date hereof...." We conclude that the district court properly found that Appellants' failure to tender the consideration barred their action for rescission.

Accordingly, the judgment of the district court is AFFIRMED.