HIGHLAND PETROLEUM, INC., C & C, Inc., Crest Petroleum Corp., Criswell Petroleum Products Co., B. Ethridge Oil Co., Gas-Mart Co., Hudson Oil Co., Mertens Oil Co., Parks Oil Co., Purity Oil Co., Ronco Oil Corp., Sooner Oil, Co., Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF ENERGY, Defendant-Appellee.

No. 10–61.

Temporary Emergency Court of Appeals.

June 26, 1986.

William H. Bode, Donald W. Fowler, and Thomas M. Parry, Spriggs, Bode & Holl-

ingsworth, Washington, D.C., were on brief for plaintiffs-appellants.

Thomas C. Newkirk, Larry P. Ellsworth, Marcia K. Sowles and Maureen M. Katz, Dept. of Energy, Washington, D.C., were on brief for defendant-appellee.

Before DUNIWAY, DAUGHERTY and MacBRIDE, Judges.

MacBRIDE, Judge:

Highland Petroleum, Inc., C & C, Inc., Crest Petroleum Corp., Criswell Petroleum Products Co., B. Ethridge Oil Co., Gas-Mart Co., Hudson Oil Co., Mertens Oil Co., Parks Oil Co., Purity Oil Co., Ronco Oil Corp., and Sooner Oil Co. ("Appellants") appeal from an order of the United States District Court for the District of Colorado (Carrigan, J.) dismissing, for lack of standing, appellants' action against the United States Department of Energy ("DOE").

We reverse and remand.

**I**

On May 11, 1979, DOE and the Vickers Energy Corporation ("Vickers") entered into a Consent Order fully settling DOE allegations that Vickers overcharged its customers for petroleum products other than crude oil from August, 1973 through March, 1979, in violation of price regulations promulgated under the Economic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904 note, and the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 751 *et seq.* Without admitting any legal violation, Vickers agreed to refund many of its customers for alleged price overcharges during the period in question.

Specifically, under the terms of the Consent Order, Vickers agreed to: (1) refund $6,300,000 to retail purchasers of its motor gasoline by reducing the retail prices of gasoline sold through company-operated service stations; and (2) refund its wholesale customers and other down-stream purchasers of its gasoline by paying $2,850,000 into an interest-bearing escrow fund, the proceeds of which would be distributed by DOE's Office of Hearings & Appeals ("OHA") through use of its special refund (or "Subpart V [Vee]") procedures. *See* 10 C.F.R. Part 205, Subpart V (1986).[1]

With respect to the escrow fund, the Consent Order provided that "as a condition precedent to any purchaser's eligibility to receive a refund" from the escrow fund, the purchaser would be required to "waive and release any and all claims and rights" it might have against Vickers for the alleged overcharges. Stipulated Record on Appeal ("R.") at 83. The Consent Order provided further that, "to the maximum extent practicable and consistent with sound public policy," all available proceeds of the escrow fund should be distributed among eligible[2] and applying purchasers. *Id.*[3]

Acting pursuant to Subpart V, *see* 10 C.F.R. § 205.282(a) (1986), OHA on February 27, 1981, issued a Proposed Decision and Order in which it "consider[ed] the procedures under which the $2,850,000 in escrow should be distributed." R. at 109. OHA suggested a method by which purchasers could "establish entitlement to a

---

1. According to federal regulations, the Subpart V special refund procedures are to be used in those cases in which DOE "is unable to readily identify persons who·are entitled to refunds ..., or to readily ascertain the amounts that such persons are entitled to receive." 10 C.F.R. § 205.280 (1986).

In the instant case the parties stipulated in the Consent Order that under the applicable federal pricing regulations it was "extremely difficult to determine the exact amount by which any·particular purchaser may have been overcharged," and,·with respect to "nonretail purchasers" of Vickers motor gasoline (such as appellants), it

was difficult to determine whether any such overcharges were "passed through the distribution chain to purchasers for resale or to ultimate consumers." Stipulated Record on Appeal ("R.") at 79–80.

2. Eligibility for refunds was to be determined by OHA in subsequent agency pronouncements. R. at 83. *See* 10 C.F.R. § 205.282 (1986).

3. After soliciting and responding to public comment to the Consent Order, DOE made the Consent Order final on August 20, 1979. *See* 44 Fed.Reg. 48,751 (1979).

refund," and proposed that refunds be made on a "volumetric basis," which OHA defined as "based on the proportion of motor gasoline purchased by the applicant to the total amount of motor gasoline marketed by Vickers through other than company operated outlets during the relevant period." R. at 114–15. OHA announced its intention to distribute any funds remaining after eligible applicants had been refunded in such a way as to benefit ultimate energy consumers in an "eight state area in which the motor gasoline pricing violations are likely to have occurred." R. at 116.

On July 17, 1981, OHA issued a final Decision and Order in which it outlined a two-state refund procedure for distributing the escrow funds. *See* 10 C.F.R. § 205.-282(c)–(d) (1986). During the first stage, OHA would distribute refunds volumetrically to eligible applicants. During the second stage, it would distribute any funds remaining. OHA did not announce a second-stage refund procedure. It deferred that decision until after it had completed the first-stage distribution, stating that "the most efficient distribution of the remainder of the Consent Order funds will be dictated, in large part, by the amount of the fund remaining after all eligible claims are paid." R. at 175.

With that, first stage claimants began applying for refunds based on the percentage of alleged Vickers overcharges they had absorbed. OHA processed these claims and distributed refunds. As a condition to receiving a refund, each claimant released Vickers from liability. Appellants were among those wholesalers who received first-stage refunds and released Vickers from liability.

On January 16, 1985, after all individual first-stage claims had been processed and the claimants paid, OHA issued a final Decision and Order on "second-stage procedures for distributing the money remaining in the Vickers consent order fund." R. at 234. *See* 10 C.F.R. § 205.282(e) (1986). OHA stated that it had "distributed a total of more than $1.5 million to 309" first-stage claimants, and that "[a]s of December 31, 1984, $2,638,217 of the Vickers consent order fund (including interest) remains available for distribution through second-stage refund procedures." R. at 235. After discussing various methods by which it might best "serve the equitable and restitutionary goals of the Subpart V process," R. at 237, OHA announced that it would distribute the remaining escrow funds directly to sixteen states in which Vickers had marketed motor gasoline, as a form of indirect restitution to unidentified injured purchasers.[4] R. at 239.

In February 1985, appellants filed the underlying action in the district court challenging OHA's January 16, 1985 Decision and Order. Thereafter, by agreement, the parties filed cross-motions for summary judgment. Appellants argued that the Decision and Order was in excess of DOE's statutory and regulatory authority, and contrary to the terms of the Consent Order. DOE argued, *inter alia*, that "as non-parties to the Consent Order [appellants] do not have standing to enforce their interpretation of the Consent Order." R. at 413.

By Order dated June 21, 1985, the district court dismissed appellants' action. The court held that appellants "lack[ed] standing to bring this action for the reasons stated in *Jaymark Corp. v. Philips Petroleum Co.*, No. 83–592 (D.D.C.Dec. 212, [sic] 1983). *See also Payne 22, Inc. v. United States*, No. DC–102 [762 F.2d 91] (TECA March 29, 1985)." R. at 883. The court did not elaborate on its reasoning, stating that, "Unfortunately time constraints preclude my writing a full opinion." *Id.* From this Order appellants bring the instant appeal.

## II

The district court's determination that appellants are without standing to bring

---

**4.** OHA indicated that the states would not be free to use the money as they pleased. OHA stated that it would release funds to a state only after approving the state's plan for distributing the funds in an equitable and efficient manner, consonant with the general restitutionary goal of Subpart V and the Vickers Consent Order. *See* R. at 239–40.

the underlying action is a conclusion of law. *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 389 (10th Cir. 1985); *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 449 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985). Accordingly, we review de novo. *In re Bialac*, 712 F.2d 426, 429 (9th Cir. 1983); *accord Bailey v. Carnival Cruise Lines, Inc.*, 774 F.2d 1577, 1578 (11th Cir. 1985); *Weimer v. Kurz-Kasch, Inc.*, 773 F.2d 669, 671 (6th Cir.1985).

## III

"Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.'" *Diamond v. Charles*, — U.S. —, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986). To satisfy the requirements of article III, the party seeking to invoke the court's authority on its behalf must have standing to sue. *See id.; Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). At a minimum, this means that the party must show an injury to a recognized interest that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3325.

The Supreme Court has stated that application of the foregoing principles "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.*, 468 U.S. at 752, 104 S.Ct. at 3325.[5] Nevertheless, the Court has recognized that, "In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Id.*, 468 U.S. at 751, 104 S.Ct. at 3325.

## IV

DOE consent orders are a component of public enforcement proceedings designed to ensure compliance, on a national scale, with federal regulations. They are "'not concerned either with *punishing* a violator for his illegal conduct or with *compensating* a victim for his injuries.'" *Payne 22*, 762 F.2d 91, 93 (Temp.Emer.Ct. App.1985) (quoting *Bulzan v. Atlantic Richfield Co.*, 620 F.2d 278, 282 (Temp. Emer.Ct.App.1980) (emphasis in original)). As a result of the particularized emphasis of these proceedings, persons who are not parties to a DOE consent order have no cognizable interest in it; as such, they lack standing to challenge or enforce it. *See Payne 22, Inc. v. United States*, 762 F.2d at 93; *Midwest Petroleum Co. v. DOE*, 760 F.2d 287, 290 (Temp.Emer.Ct.App.1985); *Jaymark Corp. v. Phillips Petroleum Co.*, No. 83–592, slip op. at 9–10 (D.D.C. Dec. 21, 1983) [Available on Westlaw, DCTU database] *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975).

In the instant case, although the district court declined to issue a written, reasoned disposition, it explicitly relied on *Jaymark* and *Payne 22* in dismissing appellants' action. In *Jaymark*, No. 83–592 (D.D.C. Dec. 21, 1983), *cited with approval in Payne 22*, 762 F.2d at 93, plaintiffs sought to enforce their interpretation of consent orders entered into by DOE and private defendants in settlement of "stripper well exemption regulation" litigation. Attempting to circumvent the general rule that non-parties may not challenge or enforce consent orders directly or in collateral proceedings, plaintiffs asserted that they were intended third-party beneficiaries of the consent orders, which gave them standing. The district court, assuming *arguendo* that

---

**5.** Read literally, the Supreme Court's test certainly has been met by the appellants here. First, as overcharged purchasers of Vickers' motor gasoline, appellants have a potential restitutionary interest in the manner in which DOE distributes the escrow funds. *See S.O.S. Gasoline Enterprises, Inc. v. Department of Energy*, 4 Energy Mgmt. (CCH) ¶ 26,321 at 28,459 (D.D.C.

1981). Second, appellants arguably have been injured by DOE's refusal to first fully compensate identified injured purchasers before effecting a generalized form of restitution to the public. Finally, the prospect of appellants' obtaining relief as a result of a favorable ruling in the district court is not "too speculative." *See Allen v. Wright*, 468 U.S. at 752, 104 S.Ct. at 3325.

plaintiffs *were* intended third-party beneficiaries of the consent orders, rejected plaintiffs' argument that this fact conferred upon them standing. *Id.*, 762 F.2d at 94. In doing so, the district court adhered to the view that only parties may enforce a consent order.

Similarly, in *Payne 22*, we held that a plaintiff lacked standing to challenge the terms of a DOE consent order to which it was not a party. The consent order provided that Sun Oil Company ("Sun") would remit $25,000,000 to the general fund of the United States Treasury. Plaintiff argued that it was a victim of overcharges by Sun and that "DOE had a duty to attempt to identify those overcharged and to recompense them out of the $25,000,000 fund before the balance could be remitted to the general fund of the U.S. Treasury." *Id.*, 762 F.2d at 92–93 (footnote omitted). Plaintiff reasoned that it had standing because it was not "challenging the terms of the Consent Order but, rather, challenging the authority of DOE to enter into the consent order because it exceeded its authority by failing to make any attempt to identify victims of Sun's overcharges pursuant to its mandatory Subpart V procedures." *Id.* at 93. We rejected plaintiff's characterization of its claim as merely a challenge to DOE's authority to act because if plaintiff's challenge were successful, it would have invalidated a term of the consent order, an intolerable result. As we stated in *Payne 22*, "if DOE consent orders were to be invalidated by actions brought by third parties it 'would simply create chaos.'" *Id.* at 93–94 (quoting *Consumer Energy Council v. Duncan*, 4 Energy Mgmt. (CCH) ¶ 26,314 at 28,418 (D.D.C. 1981))

We infer from the district court's reliance on *Jaymark* and *Payne 22* that the court perceived of appellant's action as simply a challenge to the Vickers Consent Order. We cannot agree. We find that appellants' challenge to DOE's refund procedures has three prongs, only one of which is aimed at the Consent Order. Appellants allege (1) that DOE's distribution plan was contrary to the terms of the Consent Or-

der, (2) that DOE's plan to distribute refunds to the states before first fully compensating identified injured parties was in excess of DOE's statutory and regulatory authority, and (3) that DOE's methodology for calculating the second-stage refunds (i.e. volumetrically) was not supported by substantial evidence, in violation of DOE regulations.

We agree with the district court that appellants' challenge based on the Consent Order is precluded on standing grounds. *See Payne 22*, 762 F.2d at 93. However, with regard to appellants' challenges based on DOE's statutory and regulatory authority, we conclude that appellants have standing to bring the underlying action. As so limited, appellants' action presents no challenge to the Consent Order and should be allowed to proceed.

### A. *The Challenge Based on the Consent Order*

■ In moving for summary judgment, appellants contended that DOE's distribution plan violated the term of the Vickers Consent Order that provides, "to the maximum extent practicable and consistent with sound public policy, the total amount of the escrow fund ... shall be distributed among [eligible applicants]." R. at 83. Appellants argued that by this term DOE was required to distribute all available funds to eligible first-stage applicants, or to justify its refusal to do so with "[a] finding that to distribute all refunds to first-stage applicants is contrary to public policy," R. at 51 n. 14, a finding not made in this case. Since appellants are not parties to the Consent Order, they have no standing to invoke the power of the federal courts to enforce their interpretation of its terms. *See Payne 22*, 762 F.2d at 33; *Jaymark*, slip op. at 10.

In dismissing appellants' action the district court relied heavily on *Payne 22*, but the facts of that case are not directly on point. In *Payne 22*, we held that a plaintiff, as a non-party, lacked standing to challenge the terms of a consent order entered

into by DOE and Sun Oil Company ("Sun"), but we pointed out that the plaintiff retained private rights against Sun:

> Under § 210 of the [ESA], Payne and the class it represents are entitled to bring a private action against Sun to recover the amount of any overcharges they may have suffered. This private remedy is separate and apart from the agency enforcement proceeding brought by DOE against Sun which resulted in the Consent Order.
>
> ... Since Payne and the class it represents are afforded a statutory remedy by Section 210 to recover overcharges, they may not intervene or participate in DOE's enforcement proceeding.

*Payne 22*, 762 F.2d at 93. In the instant case, while appellants were "afforded" a statutory remedy by Section 210 to recover alleged overcharges, they waived their rights to sue separately for alleged overcharges as a condition to receiving their first-stage refunds from the escrow fund.

In *Midwest Petroleum Co. v. DOE*, 760 F.2d 287 (Temp.Emer.Ct.App.1985), an oil company entered into a consent order with DOE whereby, in settlement of DOE allegations of price overcharges, the company agreed to pay $14 million on a pro rata basis to purchasers of its motor gasoline. A number of purchasers brought suit to challenge a provision of the consent order that required them, as claimants, to waive their rights to sue separately in order to receive a share of the $14 million. We held that the purchasers lacked standing to challenge the consent order, notwithstanding the fact that they had relinquished their private causes of action, because they had done so voluntarily. Thus, we noted that the purchasers' "inability to bring a § 210 action is not because they are bound by the terms of the Consent Order, but because they made a voluntary business decision to sign the releases and accept the benefits of the settlement agreement." *Midwest Petroleum*, 760 F.2d at 290.

*Midwest Petroleum* is distinguishable from the case at bar, in that in *Midwest Petroleum* there was clearly an attack on the consent order, whereas in the instant case the attack is focused not at the Vickers Consent Order but at the procedure by which DOE distributed the escrow funds. Though *Midwest Petroleum* is not dispositive, it provides persuasive authority for the proposition that appellants are without standing to challenge DOE's interpretation of the Vickers Consent Order, because they voluntarily relinquished their rights to sue Vickers directly. *See Community Nutrition Institute v. Block*, 698 F.2d 1239, 1247 (D.C.Cir.1983) ("[i]n determining whether a plaintiff has [standing] ..., the focus is on the plaintiff's *allegations, not* on the availability of alternative remedies") (emphasis in original), *rev'd on other grounds*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), *vacated on other grounds*, 742 F.2d 1472 (D.C.Cir.1984).

However, we believe that the issue is not whether appellants can or cannot look elsewhere for relief, but whether they have suffered an injury to a cognizable interest sufficient to confer standing. Since appellants are not parties to the Vickers Consent Order, they do not have at stake a cognizable interest sufficient to allow them to challenge DOE's interpretation of the Consent Order.

### B. *The Challenges to DOE's Authority to Act*

We have stated that as a general rule, non-parties lack standing to challenge or enforce consent orders. However, in the instant case appellants seek to challenge not only DOE's interpretation of the Vickers Consent Order, but also DOE's statutory and regulatory authority to distribute the escrow funds in the manner intended. With regard to the latter challenge, appellants contend that the district court "failed to distinguish for standing purposes between a party's effort to challenge or enforce a consent order," to which the general rule applies, "and appellants' challenge to a Decision and Order of DOE which fails to comply with its governing statutes and regulations," to which the general rules

does not apply. Brief of Appellants at 8–9. We agree.

In *S.O.S. Gasoline Enterprises, Inc. v. DOE,* 4 Energy Mgmt. (CCH) ¶ 26,321 (D.D.C.1981), plaintiff S.O.S. Gasoline Enterprises, Inc. ("S.O.S."), a gasoline wholesaler, alleged that it had been overcharged by Getty Oil Company ("Getty") and sought reimbursement from a $25 million settlement fund established pursuant to a consent order between Getty and DOE. DOE had not yet determined how it would distribute the Getty funds, but S.O.S. claimed that it was entitled to reimbursement for the amount it had been overcharged, or at least for its pro rata share of the fund. Although the court rejected S.O.S.'s claim to an entitlement on the merits, it found that S.O.S. had standing to challenge DOE's handling of the Getty funds, despite the fact that S.O.S. was not a party to the Getty Consent Order. *Id.* at 28,459.

In *A.B. Littlefield v. DOE,* 4 Energy Mgmt. (CCH) ¶ 26,492 (D.D.C.1984), plaintiffs, also contending that they had been overcharged by Getty, sued to compel DOE to reach a decision on an appropriate disposition of the $25 million Getty settlement fund. Plaintiffs contended that DOE was inordinately delaying its distribution decision, in violation of 5 U.S.C. § 555(b), which provides that "within a reasonable time, each [federal] agency shall proceed to conclude a matter presented to it." Plaintiffs argued that, as a result of DOE's delay they were unable to file claims for refunds from the settlement fund. The court found standing. In doing so, it distinguished the case before it from the *Payne 22* and *Jaymark* line of cases: "[C]ontrary to defendants' assertion, plaintiffs are not seeking to challenge or enforce the terms of the Consent Order or to obtain an award from the escrow fund. Rather, plaintiffs are seeking to enforce DOE regulations that apply to the escrow fund." *Id.* at 29,564.

■ A distillation of the above cases reveals that a litigant should be free to challenge the way DOE implements or effectu-

ates the terms of a consent order to which the litigant is not a party, so long as the litigant's action does not challenge the consent order or require an interpretation of its terms. Within the framework of this distillation, the above-discussed cases can be easily reconciled. For example, in *Payne 22,* plaintiffs challenged the consent order, while in *Jaymark,* plaintiff's action entailed an interpretation of the consent order's terms. *See Jaymark,* slip op. at 4–5. Thus, in these cases standing was found not to exist. By contrast, in *Littlefield* and *S.O.S.,* the challenges to DOE's handling of the distribution of settlement funds assumed the validity and finality of the consent orders involved. Thus, in these cases standing *was* found to exist.

■ Insofar as standing is concerned, the instant case is analogous to *S.O.S.* and *Littlefield.* Appellant's allegations that DOE's handling of the distribution of the escrow funds exceeded its statutory and regulatory authority do not challenge the Vickers Consent Order or entail an interpretation of its terms. Rathers, appellants' allegations assume the validity of the Consent Order, and take up where it leaves off, at the manner of distribution of the escrow funds.

Accordingly, we hold that appellants have standing to challenge DOE's actions with regard to its distribution of the escrow funds.

V

■ Having concluded that appellants do have standing to sue DOE for alleged violations of DOE's federal statutory and regulatory authority, we turn to a determination of whether we shall consider the merits of the case.

We are reminded by DOE, *see* Brief for the Department of Energy at 15, that we " 'may consider alternative bases offered by appellees for upholding the judgment below, even though they were not relied on by the district court and appellees have not

filed a formal cross appeal.' " [6] *Ashland Oil, Inc. v. DOE*, 760 F.2d 298, 302 (Temp. Em.Ct.App.1985) (quoting *Matter of Henderson*, 577 F.2d 997, 1002 n. 5 (5th Cir. 1978)); *see Schweiker v. Hogan*, 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982); *Blum v. Bacon*, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5 (1982). However, the above proposition is but a corollary to "the general rule ... that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeal, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. at 121, 96 S.Ct. at 2877. When appellate courts reverse a lower court's holding that standing does not exist, they routinely remand the case back to the lower court for consideration of the merits. *See Rental Housing Association of Greater Lynn, Inc. v. Hills*, 548 F.2d 388, 391 (1st Cir.1977); *Constructores Civiles de Centroamerica, S.A. (CONCICA) v. Hannah*, 459 F.2d 1183, 1195 (D.C.Cir. 1972); *see also Singleton v. Wulff*, 428 U.S. at 119–21, 96 S.Ct. at 2876–77 (appellate court's determination to proceed beyond the issue of standing to a resolution of the case's merits reversed by the Supreme Court).

In the instant case, the district court's dismissal was based solely on the issue of standing. While other issues were addressed by the parties in their cross-motions for summary judgment, the district court did not rule on these issues and on appeal appellants address themselves exclusively to the standing issues.[7] *See A & A Concrete, Inc. v. White Mountain Apache Tribe*, 676 F.2d 1330, 1333 (9th Cir.1982) (appellate court refused to consider grounds not ruled upon by the district court or briefed to the appellate court). On the record before us, it does not appear that proper resolution of the issues is "beyond any doubt," or that the issues must be resolved now to avoid injustice. *Singleton v. Wulff*, 428 U.S. at 121, 96 S.Ct. at 2877. Accordingly, we shall remand this case back to the district court for consideration of appellants' claims on the merits.

VI

REVERSED AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

---

6. In all of the cases cited by DOE for this proposition the courts were considering alternative substantive grounds for upholding judgments below that were themselves made on substantive grounds. *See Schweiker v. Hogan*, 457 U.S. at 584–85, 102 S.Ct. at 2607; *Blum v. Bacon*, 457 U.S. at 137–38, 102 S.Ct. at 2359–60; *California Bankers Association v. Schultz*, 416 U.S. 21, 71, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974); *Ashland Oil, Inc. v. DOE*, 760 F.2d at 302–03; *Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1023 (9th Cir.1970). In none of these cases was judgment predicated on the threshold question of standing.

7. By contrast, DOE devotes 6 pages of its appellate brief to the substantive issues presented by the underlying case. *See* Brief for the Department of Energy at 15–21.