**HIGHLAND PETROLEUM, INC., et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Defendant.**

**Civ. A. No. 85–C–545.**

United States District Court, D. Colorado.

Feb. 1, 1988.

**815**

Jeffrey A. Chase, Holme Roberts & Owen, Denver, Colo., William H. Bode, Donald W. Fowler, Thomas M. Parry, Spriggs, Bode & Hollingsworth, Washington, D.C., for plaintiffs.

Robert N. Miller, Daniel S. Maus, Office of the U.S. Atty., Denver, Colo., Marcia K. Sowles, Maureen M. Katz, U.S. Dept. of Energy, Washington, D.C., for defendant.

## ORDER

CARRIGAN, District Judge.

This is an action for judicial review of a decision by the United States Department of Energy ("DOE") awarding the oil-company plaintiffs and other claimants less than the entire amount of money refunded in a consent agreement between DOE and Vickers Energy Corporation. The parties have filed cross-motions for summary judgment that have been fully briefed. Additionally, an amicus curiae brief has been filed by the state of Colorado, Texas, Kansas, Minnesota, Missouri and Oklahoma in support of DOE's cross-motion. Oral argument would not materially assist my decision.

The Economic Stabilization Act of 1970, as amended, ("ESA") 12 U.S.C. § 1904 note, and the Emergency Petroleum Act of 1973 ("EPAA"), 15 U.S.C. § 751 *et seq.*, indirectly prompted this litigation. DOE's Office of Enforcement had entered into a consent order with Vickers that settled the Office of Enforcement's allegation that Vickers had overcharged its customers in sales of petroleum products from August 19, 1973, through March 1979 in violation of the Mandatory Price Regulations, 10 C.F.R. Part 212, promulgated under those statutes.[1]

The undisputed facts are as follows. Under the consent order, DOE and Vickers agreed on these remedies: (1) Vickers would reduce its prices for retail sales of motor gasoline through Vickers' own service stations in the amount of $6,300,000; and (2) Vickers would pay $2,859,000 into an interest-bearing account for distribution by OHA to purchasers of Vickers' gasoline

---

1. DOE "may at any time resolve an outstanding compliance investigation or proceeding with a Consent Order." 10 C.F.R. § 205.199J(a).

other than those retail customers who purchased from Vickers-operated stations.

In February 1979, DOE's Office of Hearings and Appeals ("OHA"), the agency's adjudicatory body, promulgated regulations providing for special refund (or "Subpart V") procedures under 10 C.F.R. Part 205, Subpart V, 44 Fed.Reg. 8562 (Feb. 9, 1979). The purpose of these regulations was to establish a framework "pursuant to which refunds may be made to injured persons" in order to remedy the effects of alleged violations resolved by DOE through consent orders. 10 C.F.R. § 205.280.[2]

On August 30, 1979, the Office of Enforcement filed a petition with OHA to initiate Subpart V procedures with respect to the $2,850,000 Vickers consent order because it was unable to readily identify potentially injured parties or the amount of the refund to which they might be entitled. After OHA issued a proposed decision and received written comments during the statutory period, it issued a final decision and order. That order established a two-stage procedure for granting refunds out of the $2,850,000 earmarked for purchasers of motor gasoline other than those retail customers that had purchased gasoline from Vickers–operated stations.

Under the decision, OHA decided to grant refunds to individual claimants who could demonstrate that they: (1) had purchased Vickers motor gasoline (other than through Vickers-operated retail stations) during the period covered by the consent order; and (2) had not passed on the alleged overcharges to their customers. OHA determined that refunds would be made on a volumetric basis under which the amount of each refund would be based on the portion of gasoline purchased by the applicant in relation to the *total amount* of gasoline marketed by Vickers through non-company-operated retail outlets during the relevant period.

Prior to the final decision, Vickers had requested that all the funds be distributed to first-stage claimants. OHA, however, stated that distribution of all the funds to first stage claimants would be inequitable if relatively few successful applications were filed since "each claimant's share would be many times greater than its actual injuries" and "the injuries of unidentified consumers and other downstream purchasers would go unremedied." For the second stage distributions, OHA decided to withhold its decision until the first stage had been completed and OHA had learned how much of the funds remained.

Each oil-company plaintiff filed a refund application with OHA to obtain its share of the first-stage distributions. In a series of decisions beginning in February 1982, OHA granted most of the plaintiffs a portion of the refunds requested based on the amount of Vickers gasoline they had purchased and resold and on which they were able to show that they had absorbed a share of the alleged overcharges. The first-stage applicants as a whole received $1,360,993 plus interest out of the $3,206,479.00 fund, or 42% of the total amount. Plaintiffs were awarded a refund of $0.001783 per gallon.[3]

On January 16, 1985, OHA issued a decision and order announcing the second-stage refund procedures. In that decision, OHA declared that "[t]he objective of the second stage is most nearly to restore the status quo ante of attempting to return the remaining funds obtained by DOE to those who were injured by the alleged overcharges." OHA concluded that because only approximately two-thirds of the purchasers submitted claims, the most appropriate method of reaching the unidentified injured consumers would be to apportion the remaining funds among the sixteen states where Vickers had marketed its gasoline during the relevant period. Accord-

---

2. The Subpart V regulations are specifically designed for those situations where DOE enforcement officials are unable to identify those persons who may have been injured by alleged or adjudicated violations or to determine readily the amount of those persons' injuries. 10 C.F.R. §§ 205.280, 205.281(b). In these proceedings,

OHA attempts to determine which persons in fact bore the economic burden of the overcharges.

3. OHA established this figure by dividing the amount in the escrow fund by the total volume of Vicker's sales to independent marketers.

ingly, OHA withheld from the identified purchasers approximately $1,653,000 of the $2,850,000 originally placed in the escrow account. The decision and order provided that money would only be disbursed to a state upon OHA approval of that state's plan for expenditure of the funds.

Plaintiffs filed this action in February 1985 challenging OHA's decision and order regarding the second-stage refunds. On June 21, 1985, I dismissed the action, holding that the plaintiffs lacked standing. Plaintiffs appealed this ruling to the Temporary Emergency Court of Appeals of the United States. That court agreed that the plaintiffs lacked standing to challenge DOE's interpretation of the consent order with Vickers, but held that they had standing to challenge DOE's authority to distribute refunds to the states. *Highland Petroleum, Inc. v. DOE,* 798 F.2d 474 (Temp. Emer.Ct.App.1986). The appeals court then remanded the action to this court.

Under Fed.R.Civ.P. 56(c) summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since there does not appear to be any material fact in dispute and the parties have stipulated that the issues in this action can be resolved on the cross-motions for summary judgment, the case is ripe for disposition by summary judgment.

In their memorandum in support of their motion for summary judgment, the oil-company plaintiffs raise three issues that are still pending.[4] First the plaintiffs assert that DOE's decision to award a portion of the Vickers fund to state governments exceeded its statutory and regulatory authority and was arbitrary and capricious. Second the plaintiffs contend that DOE has failed to justify its refusal to distribute all of the escrowed funds among the identified victims of the overcharges. Third the plaintiffs argue that DOE's refusal to distribute all the Vickers funds to the identi-

fied injured parties is not supported by substantial evidence in the administrative record.

Thus, the relevant issues are:

(1) Whether DOE was authorized to implement the consent order by disbursing funds to states in order to allow those states to distribute the funds to unidentified victims of Vickers' petroleum price overcharges even though it did not demonstrate that all of the identified victims of the overcharges were fully compensated; and

(2) Whether DOE's decision was supported by substantial evidence in the administrative record.

1. *DOE's Statutory and Regulatory Authority to Distribute Funds to the States.*

Plaintiffs contend that DOE acted unlawfully in refusing to distribute all of the refund money to the oil-company plaintiffs that: (1) were injured by Vickers' overcharges and (2) filed refund applications. They claim that DOE should have ensured that the known victims of the overcharges were fully compensated before it decided to disburse part of the refund money to the states for ultimate distribution to unknown victims.

In refunding money to parties that were injured by petroleum price overcharges, DOE exercises its restitutionary powers. DOE has broad, though not unfettered, discretion in fashioning remedies for overcharges. *Denny Klepper Oil Co. v. DOE,* 598 F.Supp. 522 (D.D.C.1984). *See Sauder v. DOE,* 648 F.Supp. 1341, 1348–49 (Temp.Emer.Ct.App.1981); *Bonray Oil Co. v. DOE,* 472 F.Supp. 899, 903–04 (W.D. Okla.1978), *aff'd per curiam,* 601 F.2d 1191 (Temp.Emer.Ct.App.1979) (DOE possesses the implied power, by reference to ESA § 209 and the statutory purposes, to effect restitution by ordering a violator of the price regulations to refund overcharges to the violator's injured customers).

---

**4.** A fourth issue—whether DOE's proposed distribution is contrary to the Vickers consent order—is barred by this court's ruling, affirmed by the Temporary Emergency Court of Appeals, that the plaintiffs lack standing to assert that DOE violated the consent order.

■ Although the plaintiffs concede that DOE may sometimes distribute funds to the states or other surrogates for injured parties, they argue that DOE may not distribute funds to the states before identified parties, such as the plaintiffs, have been fully compensated, and that they have not been fully compensated. (*See* plaintiffs' memorandum, at 4.) DOE's response is that its remedial authority is not limited to providing refunds to "identified claimants" because such a policy would "assume[ ] that the actual claimants are the only parties injured by the alleged overcharges." (Defendant's memorandum, at 12.) DOE further contends that "[i]f [the] plaintiffs' position were accepted, the restitutionary goal of restoring the status quo ante would be defeated. Instead it would provide inappropriate windfalls to the applicants who did apply at the expense of the unidentified injured parties." *Id.*

Plaintiffs rely on *Citronelle–Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717 (Temp.Emer.Ct.App.), *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982), where the court reversed a district court order directing payment to the federal treasury of overcharges collected from the wrongdoers. The court held that the government has "a *duty* to try to ascertain those overcharged, and refund them, with interest, from the restitution funds." *Id.* at 723 (emphasis in original).

However, the argument that *Citronelle* limits refunds to specific identifiable victims was rejected in *Denny Klepper Oil Co. v. DOE*, 598 F.Supp. 522 (D.D.C.1984). The court there said that *Citronelle* "holds only that [the department] has a duty to seek out and provide refunds to those actually injured." *Id.* at 526. Here, OHA *has* attempted to locate all injured parties.

Moreover, as OHA stated in its Notice of Special Refund Procedures for Vickers:

"The fact that claims to specific refunds may not have been proven does not mean that injury has not occurred. Rather, the absence of claims for the full amount of the settlement would tend to reflect the difficulty of filing a valid individual claim and to indicate that some resellers of Vickers motor gasoline were not injured because they passed on to their customers the increased costs which they incurred." 46 Fed.Reg. 15,320, 15,323 (1981).

Furthermore, the plaintiffs fail to cite any case that expressly held that DOE may never disburse refund money to the states if known victims of petroleum price overcharging are not fully compensated by its restitutionary plan.[5]

DOE's authority to use the states as conduits for its refund distribution was upheld in *In re the Department of Energy Stripper Well Exemption Litigation*, 578 F.Supp. 586 (D.Kan.1983). There, in a case that also involved an attempt by DOE to distribute funds to victims of petroleum price overcharging, intervening states argued that the court should order distribution of the money to the states as representatives of the ultimate consumers of petroleum products. They insisted that "since DOE could not precisely determine losses suffered by particular claimants, the [c]ourt should, in the interests of restitution and equity, distribute the fund to the States, in proportion to their [respective] citizens' use of petroleum products during the controls period, for use in energy-related programs." *Id.* at 591. The court decided that the ultimate consumers of petroleum products probably bore the brunt of the overcharges and that the equitable

---

5. Plaintiffs contend that *United States v. Ringer and Ringer Enterprises*, 492 F.Supp. 350 (D.Colo. 1980), buttresses their contention that DOE exceed its authority. In *Ringer* the court set aside a DOE order that had required a gasoline station to refund certain overcharges by rolling back its prices for future consumers. However, *Ringer* is distinguishable from this case. There, DOE had failed to make any effort to otherwise identify individuals injured by the overcharges. In contrast, here, as mentioned earlier, DOE has made a substantial effort to identify all of the victims of the overcharges. The court in *Ringer* also determined that DOE's plan to distribute refunds to future purchasers was improper because no nexus was established between the overcharged customers and the future consumers. Here, however, OHA's second stage decision requires state plans to benefit a class bearing a close nexus to the bases of the alleged violation.

goals of restitution mandated distribution of the refunds to the state or federal governments for use in programs designed to aid energy consumers. The court reasoned:

"Such a distribution would be akin to the *cy pres* doctrine in the legal field of charitable trusts where, when it is impossible to carry out the specific intent of the testator, courts dispose of the funds in the 'next best' manner. Such a distribution has been extended to the distribution of funds in class action and overcharge cases and, where it is impossible to specifically identify the proper claimants, allows the funds to be used in a manner designed to benefit the claimants as a class." *Id.* at 594.

I conclude that DOE has complied with *Citronelle*'s requirement that the government "try to ascertain those overcharges, and refund them, with interest, from the restitutionary funds." Specifically, DOE has permitted all the parties injured by the overcharges to file applications for a refund. Because only roughly two-thirds of those parties injured applied, it was necessary that the restitutionary plan account for the unidentified victims.

I therefore conclude that DOE has the authority to use the states as conduits for restitution of the overcharge funds even if the parties that filed applications have not obtained full redress of their injuries. DOE's decision constituted an appropriate measure to restore the status quo.

### 2. *Whether DOE's Decision was Supported by Substantial Evidence.*

The standard of review of the DOE's decision is set out in ESA § 211(d)(1). That section provides that "[n]o order of such agency shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority or is based upon findings which are not supported by substantial evidence." An agency decision must be affirmed as long as it is rational and will be set aside only if there was a "clear error of judgment." *Grigsby v. DOE*, 585 F.2d 1069, 1074 (TECA 1978),

*cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979). Additionally, the party challenging an agency decision carries the burden of proof. *Powerine Oil Co. v. FEA*, 536 F.2d 378 (Temp.Emer.Ct.App. 1976).

Plaintiffs argue that DOE's decision and order disbursing refund money to the states is not supported by substantial evidence because the plaintiffs have been undercompensated. They contend that DOE's method for calculating the per gallon amount of refund can only be justified if a relationship exists between the refund amount of $0.001783 per gallon and the actual overcharges made by Vickers, and that no such relationship exists. They additionally note, and DOE does not dispute, that the funds placed in escrow for refund are significantly less than the total amount of the actual overcharges by Vickers. They insist that "[i]t is irrational and contrary to statutory purpose to restict an applicant who has come forward and proved injury to a recovery of only $0.001783 per gallon when funds are available to compensate more fully for the overcharge." (Plaintiffs memorandum, at 28.)

The volumetric methodology used by DOE to determine the amount of refunds to the plaintiffs is a system whereby the available refund money is allocated pro rata among *all* purchasers of Vickers gasoline unless an applicant can make a specific showing that its purchases from Vickers contained a disproportionate share of the overcharges. Plaintiffs contend that the appropriate method would have been for DOE to have distributed the money pro rata only to those purchasers who have identified themselves as victims of the overcharges.

Yet the volumetric methodology employed by DOE in this action has been upheld as a lawful and reasonable exercise of the department's restitutionary authority. *See Denny Klepper Oil, supra,* 598 F.Supp. 522. Moreover, to limit disbursement of the funds to the identified claimants would overcompensate those claim-

ants at the expense of those persons who did not file refund applications.[6]

In *Denny Klepper,* the court, in upholding OHA's decision to use the same volumetric method used in the instant action, reasoned that distributing the entire fund to actual applicants would "provide inappropriate windfalls to applicants at the expense of injured parties who did not apply," and added that "the volumetric method chosen by OHA is fair to all purchasers and has been used in other cases.... Since there is an obvious rational basis for the decision, it will not be overturned." *Id.* at 527.

Furthermore, "[t]he interpretation of a regulatory system by those charged with its enforcement should be given great deference by the judiciary." *Citronelle, supra,* 669 F.2d at 724. *See Pasco, Inc. v. FEA,* 525 F.2d 1391, 1400 (Temp.Emer.Ct. App.1975) ("[t]his court has repeatedly recognized the 'well settled principle' of the great deference to be granted the interpretations of statutes and implementing regulations by the agency charged with administering them".) In *Pasco* the court stated:

> "To be upheld, the action taken by the FEA [the Department of Energy's predecessor] need not be the same as the court or the appellee might have taken in correcting the problems occurring as a result of the energy crisis and the impact of earlier regulations, so long as the action taken is reasonable."

*Id. See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (a court is not empowered to substitute its judgment for that of the agency); *Pasco,* 525 F.2d at 1400 (in reviewing agency action of applying and enforcing its regulations, the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body). Similarly, DOE's method of refunding money in this case need not be

the same as I or the plaintiffs may have preferred.

Plaintiffs have not demonstrated that DOE's decision to distribute a portion of the money to certain states for ultimate refund to unidentified petroleum price overcharge victims was either: (1) not based upon findings supported by substantial evidence in the administrative record; or (2) unreasonable. Additionally, as stated above, I conclude that DOE's decision did not exceed its statutory or regulatory authority. I therefore conclude that DOE's decision should not be overturned.

Accordingly, IT IS ORDERED that:

(1) Plaintiffs' motion for summary judgment is denied;

(2) Defendant DOE's motion for summary judgment is granted; and

(3) Plaintiffs' action is dismissed.

---

**6.** DOE insists that:

"Firms like the plaintiffs should not receive a windfall because consumers or other purchasers do not file claims, either because the amount of their purchases was insufficient to qualify for the $15 minimum refund, because

filing an application would be too expensive, because they lacked actual knowledge of the refund procedures, or because they chose for whatever reason not to participate in the Subpart V proceeding." (Defendant's memorandum, at 19.)