**Paul W. WEIMER, Plaintiff-Appellant,**

v.

**KURZ–KASCH, INC., Defendant-Appellee.**

No. 84–3325.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1985.

Decided Sept. 18, 1985.

As Amended on Denial of Rehearing Oct. 30, 1985.
Rehearing and Rehearing En Banc Denied Dec. 10, 1985.

---

**670**

Robert T. Dunlevey, Jr., Lang, Horenstein & Dunlevey, Stephen A. Watring, argued, Dayton, Ohio, for plaintiff-appellant.

Frank H. Stewart, argued, Taft, Stettinius & Hollister, Martin McHenry, Cincinnati, Ohio, for defendant-appellee.

Before MERRITT and CONTIE, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff Paul Weimer, a retiree of defendant Kurz-Kasch, Inc.'s South Broadway plant, in Dayton, Ohio, filed this class action under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to force Kurz-Kasch to resume providing life and health insurance benefits to certain Kurz-Kasch retirees. Additionally, in his amended complaint, plaintiff Weimer asserted a pendent state law breach of contract claim against defendant Kurz-Kasch. In its answer, Kurz-Kasch admitted terminating the life and health insurance benefits of its South Broadway retirees but contended that its obligation to provide retiree benefits expired with the expiration of the collective bargaining agreement between Kurz-Kasch and the relevant unions.

Both plaintiff Weimer and Kurz-Kasch moved for summary judgment. The district court held that Kurz-Kasch's obligation to provide retiree insurance benefits ceased with the expiration of the collective bargaining agreement; thus the court granted defendant's motion for summary judgment, denied plaintiff's motion for summary judgment, and entered judgment for defendant from which Weimer appealed. We now vacate the trial court's grant of defendant's motion for summary judgment. Furthermore, we vacate the trial court's denial of plaintiff's motion for summary judgment and remand with instructions to enter judgment for plaintiff. Finally, we remand the action to the district court for further proceedings with regard to plaintiff's motion to certify a class action and with regard to damages.

**I. Background**

During the mid 1970s, Kurz-Kasch operated four manufacturing plants in Ohio. This action involves only Kurz-Kasch's South Broadway plant, from which plaintiff Weimer retired. Workers at the South Broadway plant went on strike in September, 1975, at the expiration of their collective bargaining agreements. Kurz-Kasch immediately ceased paying life and health insurance benefits for active employees but continued to pay for such benefits for retirees. On November 17, 1975, after negotiation attempts had failed, Kurz-Kasch permanently closed its South Broadway plant. (Kurz-Kasch's other plants remained in operation.) On December 16, 1975, Kurz-Kasch notified South Broadway retirees that, for financial reasons, "effective January 1, 1976, life insurance on all retired personnel will be discontinued and effective February 1, 1976 you will no longer be included in our Blue Cross/Blue Shield plan." App. 179. The cessation of the South Broadway retirees' insurance benefits led to the filing of this action.

The workers at the South Broadway plant were represented by three different unions, each of which had its own collective bargaining agreement with Kurz-Kasch. This suit is brought by plaintiff Weimer, a former member of the Moulders union, on behalf of an *ad hoc* group of South Broadway plant retirees who were members of either the International Association of Machinists and Aerospace Workers, Local 225, (the Machinists) or the International Moulders and Allied Workers Union, Local 45

(the Moulders). App. 1–2. A separate action against Kurz-Kasch was filed in the same district court by members of a third union, the Metal Polishers, Buffers, Platers & Allied Workers International, Local 11.[1]

As stated, both Weimer and Kurz-Kasch moved for summary judgment. Since plaintiff purportedly represented the retired members of two different unions, each of which had its own collective bargaining agreement with Kurz-Kasch, the district court examined both the Machinists' and the Moulders' collective bargaining agreements.[2] The district court found ambiguous the insurance provisions of both collective bargaining agreements upon which Weimer relied. The court then looked to the remainder of the insurance and other provisions of the collective bargaining agreements and determined that Kurz-Kasch's obligation to contribute toward life and health insurance coverage for South Broadway plant retirees ended with the September, 1975, termination of the agreements.

## II. Applicable Law

### A. Standard of review

█ The district court granted defendant's motion for summary judgment after

determining that there were no genuine issues of material fact in that, as a matter of contract interpretation, the collective bargaining agreements did not grant retirees insurance benefits subsequent to expiration of the collective bargaining agreements. We agree with the district court's conclusion that the only issue presented is one of contract interpretation, but we are unable to concur in the district court's conclusion, based on its interpretation of the collective bargaining agreements, that Kurz-Kasch is entitled to judgment. Contract interpretation, such as is involved here, is a question of law not subject to the clearly erroneous standard; thus, in reviewing the district court's interpretation of the pertinent contracts, we are not bound by Fed.R.Civ.P. 52(a). *Chevron, U.S.A. v. Belco Petroleum Co.*, 755 F.2d 1151, 1153–54 (5th Cir.1985). The trial court's conclusions of law are freely reviewable by the court of appeals. *Washington Transit Authority v. Mergentime Corp.*, 626 F.2d 959, 961 (D.C.Cir.1980). *See also Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir.1985). In interpreting these collective bargaining agreements, we reach a contrary conclusion and hold that these retirees were entitled to continued insurance benefits.

1. The Metal Polishers filed an action against Kurz-Kasch and sought reinstatement of retiree insurance benefits; the trial court initially referred that action to an arbitrator. While the Metal Polishers' action was pending before the arbitrator, Weimer, acting on behalf of Machinists and Moulders retirees, filed the instant action against Kurz-Kasch. When the arbitrator announced his decision that the Metal Polishers' retirees' insurance benefits terminated with the collective bargaining agreement, the district court entered judgment for Kurz-Kasch both in the action filed by the Metal Polishers and in the instant action filed by retiree Weimer. The plaintiffs in both actions appealed, and this court reversed and held that under the circumstances the issue whether Kurz-Kasch was obligated to provide continued insurance coverage to South Broadway plant retirees was not subject to arbitration. *See Metal Polishers, Buffers, Platers and Allied Workers, International Union v. Kurz-Kasch, Inc.*, 642 F.2d 452 (6th Cir.1980), *cert. denied*, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 419 (1981).

On remand in the action brought by the Metal Polishers, the district court held that Kurz-

Kasch's obligation to provide insurance benefits to its South Broadway plant retirees ended with the September, 1975, expiration of their collective bargaining agreement. *See Metal Polishers Local 11 v. Kurz-Kasch, Inc.*, 538 F.Supp. 368 (S.D.Ohio 1982). That judgment was not appealed and is not before us.

On remand in the action brought by Weimer, the district court determined that Machinists and Moulders retirees were not entitled to insurance benefits past the expiration of their collective bargaining agreements. That decision is now before us on this appeal.

2. The parties appear to agree, and the district court assumed, that while the language of the two agreements was slightly different, for present purposes it was virtually identical. Accordingly, it appears that if Weimer is entitled to prevail with respect to the Moulders' contract, he is entitled to prevail with respect to the Machinists' contract. Similarly, if Kurz-Kasch is entitled to prevail under the Moulders' contract, it is entitled to prevail under the Machinists' contract.

### B. Case law concerning retiree insurance benefits

This court dealt with the question whether retirees' health insurance benefits continued past the expiration of the collective bargaining agreement in *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), and Local 134, UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). In *Yard-Man*, this court laid out the manner in which a court should proceed when examining the duration of retiree benefits:

> [W]hether retiree insurance benefits continue beyond the expiration of the collective bargaining agreement depends upon the intent of the parties. Clearly the parties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship.... Any such surviving benefit must necessarily find its genesis in the collective bargaining agreement.
>
> \* \* \* \* \* \*
>
> [T]he court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor law. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict the basic principles of federal labor law.

*Yard-Man*, 716 F.2d 1479–80 (citations omitted).[3]

Although *Yard-Man* counseled that courts are to look first at the collective bargaining agreement when determining whether the parties intended that retiree benefits continue beyond expiration of the agreement, the court also emphasized two factors weighing in favor of an interpretation that retiree benefits survive expiration of the collective bargaining agreement.

First, this court recognized that normally retiree benefits are vested. *Yard-Man*, 716 F.2d at 1482 n. 8. This is true because retirees, with respect to their benefits, are unprotected in the collective bargaining process. Upon expiration of a collective bargaining agreement, a union owes no duty to bargain for continued nonvested benefits for retirees. *Yard-Man*, 716 F.2d at 1482. A union may choose to forego nonvested retiree benefits in future negotiations in favor of more compensation

---

**3.** In addition to *Yard-Man,* two other Sixth Circuit cases deal with the nature of retirees' insurance benefits. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 784 v. Cadillac Malleable Iron Co.,* 728 F.2d 807 (6th Cir.1984) (affirming the district court's judgment that the employer was obligated to provide health insurance benefits for its retirees without regard to the expiration of the collective bargaining agreement); *Upholsterers' International Union v. American Pad & Textile Co.,* 372 F.2d 427 (6th Cir.1967) (affirming the trial court's grant of summary judgment for retirees who were challenging the discontinuance of their insurance benefits). The Ninth Circuit also addressed the issue of retiree insurance benefits. *See Bower v. Bunker Hill Co.,* 725 F.2d 1221 (9th Cir.1984).

for active employees. The union may not, however, "bargain away retiree benefits which have already vested in particular individuals. Such rights, once vested upon an employee's retirement, are interminable and the employer's failure to provide them [is] actionable under § 301 by the retiree." *Id.* at 1482 n. 8 (citing *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971)). *See also Upholsterers' International Union v. American Pad,* 372 F.2d 427, 428 (6th Cir.1967).

Second, the *Yard-Man* court recognized that "retiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." *Id.* at 1482.

> Thus, when the parties contract for benefits which accure upon achievement of retiree status, *there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree.*

*Id.* (emphasis added). *See also Cadillac Malleable Iron Co.,* 728 F.2d 807, 809 (6th Cir.1984).

### III. Analysis

■ As *Yard-Man* dictates, the district court first examined the explicit language of the collective bargaining agreement to discern whether insurance benefits were to continue past the expiration of the collective bargaining agreements. The collective bargaining agreement between Kurz-Kasch and the Machinists provided in relevant part:

### Article XV.

#### Group Insurance

106. The Company shall pay not less than seventy percent (70%) during the first year of the term of this Agreement, and not less than eighty percent (80%) during the second year of the term of of this Agreement, of all group insurance premiums required with respect to Group Insurance Plans presently in effect or any future insurance plans hereafter

agreed to between the Company and the Union.

\* \* \* \* \* \*

108. *The Company shall pay the cost* of all group insurance premiums required with respect to group insurance plans presently in effect for Employees who retire through normal retirement, which is sixty-two (62) years of age, or older, or who retire prior to that age by reason of such disability as entitles the Employee to disability benefits ∴.. *as long as such Employee remains retired and unemployed, either by the Company or by anyone else.*

App. 46–47 (emphasis added).

The collective bargaining agreement between Kurz-Kasch and the Moulders provided in pertinent part:

### Article XVI.

#### Group Insurance

1. The Company shall pay not less than seventy percent (70%) of all group insurance premiums required with respect to group insurance plans presently in effect or any future insurance plans hereafter agreed to between the Company and the Union. Beginning September 15, 1974, the Company shall pay not less than eighty percent (80%) of such insurance premiums as described above.

\* \* \* \* \* \*

3. It is agreed that Employees who are sixty-two (62) years of age or over, or who retire prior to that age by reason of such disability as entitles the Employee to disability benefits under the Federal Social Security Law, and who have ten (10) years' continuous employment with the Company, may, upon retirement, continue their participation in existing group insurance plans applicable to such Employee by paying thirty percent (30%) of the premium required for such insurance [twenty percent (20%), beginning September 15, 1974]. The Company agrees to pay all such group insurance premiums required for the continuation of existing Employee group insurance with respect

**674**

to any employee who reaches the age of sixty-two (62) years or more and who has fifteen (15) years or more of continuous service with the Company, or who retires prior to that age by reason of such disability as entitles the Employee to disability benefits under the Federal Social Security Law and has fifteen (15) years' continuous employment with the Company, and who retires from active employment. *It is understood and agreed that such insurance premium payment provision shall continue only so long as such Employees are, in fact, retired and remain unemployed,* either by the Company or by anyone else, and that right is reserved by the Company to pay such further retirement benefits in such cases as it may, in its discretion, determine advisable in individual cases.

App. 35–36 (emphasis added).

Plaintiff argued that both these provisions, particularly the language italicized above, demonstrated the intent of Kurz-Kasch and the unions that the company provide insurance benefits to retirees as long as the retirees remained retired and unemployed, regardless of the expiration of the collective bargaining agreement. The district court, however, found the italicized language ambiguous. Unlike the district court, we interpret this language to mean what it appears to mean—that retirees are granted insurance benefits at Kurz-Kasch's expense for as long as the retiree remains retired and unemployed. This language places only one limitation on the continuance of retiree insurance benefits, i.e. the retiree must remain retired and unemployed.

After finding the italicized language ambiguous, the district court proceeded to examine other language of the collective bargaining agreements to determine the parties' intent. It first focused on the fact that these very insurance provisions obligated the Company to pay premiums for "group insurance plans *presently in effect*" or "*existing* employee group insurance." App. 221 (emphasis added). The district court then stated:

the obligation undertaken by the employer with respect to retired employees contemplates their coverage under existing group insurance policies on all of its employees. Payment of premiums under a group life or health insurance policy which covers both present employees and retired employees is a markedly different financial undertaking than an agreement to pay such premiums for a group consisting solely of retirees.

App. 221 (citing *America, AFL–CIO v. Lee National Corp.,* 323 F.Supp. 1181, 1188 (S.D.N.Y.1971). Kurz-Kasch interprets this language in the district court's opinion to mean that the quoted phrases amounted to a limitation on the *duration* of the insurance coverage, i.e. that retiree insurance coverage was to be provided only as long as the insurance coverage on its active employees remained in effect.

We interpret the insurance provisions differently. These provisions provided that, with regard to active employees, Kurz-Kasch would pay a specified percentage of the cost of group insurance premiums with respect to "group insurance plans presently in effect or any future insurance plans hereinafter agreed to by" Kurz-Kasch and the unions. On the other hand, the insurance provisions stated that, with regard to retirees, Kurz-Kasch would pay a specified percentage of the cost of their insurance premiums "with respect to group insurance plans presently in effect" (Machinists' agreement) or with respect to "existing group insurance plans" (Moulders' agreement). Thus, present employees were granted the insurance benefits provided either by plans presently in effect or by plans negotiated in the future, but retirees were granted insurance benefits only in plans presently in effect. This court finds that, in making this distinction between active and retired employees, the parties' aim was to limit the level of benefits of a retiree's insurance coverage to that provided by the group policy in effect when he or she retired. Active employees, however, were to receive the level of benefits of insurance plans negotiated in future bargaining sessions. The contrary interpreta-

tion, that in limiting retirees' insurance benefits to existing group insurance plans the parties intended to impose a *durational* limit on retiree benefits, fails to read the insurance provisions as a whole. We find that, read as a whole, the insurance provisions' grant of insurance benefits with respect to plans "presently in effect" or "existing plans" simply commands that the retiree receive the level of benefits provided by the plan that was in effect when he or she retired, not that the duration of the retiree's coverage is limited to the life of that plan.[4][5]

Another factor persuading the district court to adopt Kurz-Kasch's position that its obligation to provide retiree insurance benefits ended with the expiration of the collective bargaining contract was the presence of general termination clauses in the agreements. The Moulders' and Machinists' collective bargaining agreements contained identical termination clauses that stated:

### Term

This Agreement shall be effective as of September 15, 1973, and shall remain in effect for a period of two (2) years, until midnight, September 14, 1975, and thereafter for successive periods of one (1) year each, subject to termination by either party hereto at the end of any such year upon sixty (60) days' written notice to the other party of intent to terminate this Agreement or to amend or modify any of the terms or conditions hereof at the end of any such period. In the event of the giving of any such notice to terminate or amend this Agreement at the end of the original or any succeeding term hereof, this Agreement and all terms and conditions hereof shall terminate as of the end of the term in which such a notice was given.

Although the district court acknowledged that under *Yard-Man* and *American Pad* a general termination clause does not necessarily indicate that retiree benefits were intended to expire with the termination of the collective bargaining agreement, the district court found that these collective bargaining agreements, different from *Yard-Man*, contained no indication that the benefits were meant to survive the agreements. The district court then noted that the general termination clause provided "all terms and conditions [of the agreement] shall terminate as of the end of the

4. In interpreting the collective bargaining agreements we do not find it necessary to go outside the four corners of the agreements. We note, however, that our interpretation is consistent with the uncontradicted testimony of former Kurz-Kasch personnel director Fred Delaney. Mr. Delaney testified that retirees received the level of insurance benefits granted by the collective bargaining agreement in effect at the time of their retirement and were not eligible to receive any increased benefits that resulted from collective bargaining agreements renegotiated subsequent to their retirement.

5. On this appeal Kurz-Kasch contends that the district court determined as a matter of fact that the group insurance policies under which plaintiff retirees had been covered were no longer in effect. We believe Kurz-Kasch has misinterpreted the district court's findings on this issue. In its opinion, the district court noted only that "[s]ubsequent to the plant closure, Kurz-Kasch terminated all group life and health insurance policies *as to all hourly employees, salaried employees, and retired employees of the South Broadway Plant,*" App. 216 (emphasis added). We disagree with Kurz-Kasch's conclusion, based on this finding, that subsequent to the closing of the South Broadway plant, the existing group insurance policies were discontinued. On the contrary, the discontinuance of the group insurance policies *as to South Broadway employees and retirees* does not mean that the master policies were discontinued. According to the record, the group insurance policies were structured so that Kurz-Kasch purchased one master group life insurance policy and one master group health insurance policy. All Kurz-Kasch employees (salaried and hourly) and retirees from all Kurz-Kasch plants were covered under these two group policies. Each policy designated various levels of coverage for the several categories of persons covered. When the South Broadway plant closed, Kurz-Kasch merely deleted some categories of the several categories of persons insured under the policies, and the company simply discontinued paying coverage for certain groups covered under the policy. We comment on this portion of Kurz-Kasch's argument only for the sake of completeness, since under our interpretation of the contract the language "existing" or "presently in effect" group insurance plans refers to the level of benefits, not to the duration of the coverage.

676

term ..." App. 221. This provision, according to the district court, limited to the term of the agreements all of the obligations undertaken by Kurz-Kasch in the collective bargaining agreements.

This court held in *Yard-Man* that a general duration or termination clause ending the collective bargaining agreement as of a certain date did not demonstrate an intent that all benefits described in the agreement terminate as of that date. 716 F.2d at 1482–83. *See also Bower v. Bunker Hill*, 725 F.2d 1221, 1223 (9th Cir.1984) (stating that a retirement medical insurance plan, which lacked an explicit expiration date, was not necessarily bound by the expiration date of the labor-management agreement). In light of the insurance provisions' conditioning the grant of retiree insurance benefits only on the retiree's remaining retired and unemployed, and in light of the parties' failure to specify that retiree insurance benefits expired with the termination of the collective bargaining agreements, we hold that the general termination clause does not support a finding that retiree benefits ended when the agreements expired.

■ As heretofore noted, in this circuit "when parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely

intended those benefits to continue so long as the beneficiary remains a retiree." *Yard-Man*, 716 F.2d at 1482. *See also Cadillac Malleable Iron Co.*, 728 F.2d at 809. Certainly this inference applies here where the insurance provisions themselves unequivocally stated that retiree insurance benefits were to continue for so long as the retiree remained retired and unemployed.[6]

Having determined, as a matter of contract interpretation, that both the Moulders' and the Machinists' collective bargaining agreements demonstrate the parties' intent that retiree insurance benefits survive expiration of the agreements, we find that the district court should have granted plaintiff's motion for summary judgment.

## IV. State law claim

In his amended complaint, plaintiff contended that Kurz-Kasch promised its employees lifetime insurance benefits in order to induce them to continue their employment with Kurz-Kasch and that Kurz-Kasch's breach of this promise constituted a claim for state common law breach of contract. Kurz-Kasch countered that federal law has pre-empted state law in this area and thus plaintiff has no valid pendent state law claim.[7] The trial judge, in his

6. It is undisputed that Kurz-Kasch continued to pay retirees' insurance benefits for several months after the South Broadway plant closed. The district court, as we do, interpreted the contract within its four corners and did not, as we do not, give any weight to this fact. The district court noted, however, that Kurz-Kasch was "free to [continue to provide retirees' benefits]. It was not, however, *obligated* to do so under the terms of the collective bargaining agreement." App. 223 (emphasis in original). Because we find as a matter of contract interpretation that the collective bargaining agreements themselves grant retirees benefits past the agreements' expiration, we need not decide what effect, if any, should be given to this continuation of insurance benefits after the termination of the collective bargaining agreement. We point out, however, that if it were necessary, in determining the intent of the parties, to rely on facts *dehors* the contracts, the fact that retirees' insurance benefits initially were continued after the collective bargaining agreements expired and the stated reason they were discontinued would be some evidence of the parties'

intent. *See Bower v. Bunker Hill*, 725 F.2d at 1225 (citing *Cadillac Malleable Iron Co.*, 3 Emp. Ben.Cas. 1369 (W.D.Mich.1982), *aff'd*, 728 F.2d 807 (6th Cir.1984) (Ninth Circuit implicitly suggested that "payment of [retirees'] insurance benefits during a strike ... suggests that the benefits are vested.")).

7. We make no prediction whether in the circumstances here a retiree's action would be pre-empted by Section 301. We do note that the Supreme Court recently reaffirmed the principle that "when the resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be either treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers v. Lueck*, —— U.S. ——, ——, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). The *Allis-Chalmers* Court did state, however, that "not every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement ... is necessary pre-empted by § 301." *Id.* In contrast to *Allis-*

opinion, did not address the state law claim and on appeal plaintiff contends he was at least entitled to a trial on the state law claim. In light of our holding that the collective bargaining agreements' grant of retiree insurance benefits survives expiration of the agreements, we decline to rule on plaintiff's pendent breach of contract claim.

## V. Class certification

Before his retirement, plaintiff Paul Weimer was a member of the Moulders Union (International Moulders & Allied Workers Union, Local 45). He brought this action as a class action, and in his complaint he contended that he represented an *ad hoc* group of former Kurz-Kasch employees who were members of either the Moulders union or the Machinists union during their term of employment. The district court granted Kurz-Kasch's motion for summary judgment without acting on plaintiff's motion for class certification. At oral argument it was questioned whether plaintiff Weimer was an appropriate representative to bring a class action on behalf of retirees who had belonged to the Machinists union since Weimer himself had belonged only to the Moulders union. We do not reach this issue, but do note that this distinction may be of little practical consequence since both Kurz-Kasch and the plaintiff contend, and this court agrees, that the collective bargaining agreement between Kurz-Kasch and the Moulders is virtually identical in relevant respects to the collective bargaining agreement between Kurz-Kasch and the Machinists.

In view of our holding that as a matter of federal contract law, both agreements

grant retiree insurance benefits that survive expiration of the collective bargaining agreements, we leave the class certification issue to be decided by the district court on remand.

## VI. Conclusion

We vacate the district court's grant of summary judgment for Kurz-Kasch and vacate the district court's denial of plaintiff's motion for summary judgment. We remand the action to the district court with instructions to enter summary judgment for plaintiff to the effect that the agreements grant retiree insurance benefits that survive expiration of the collective bargaining agreements and for further proceedings consistent with this opinion, including consideration of the class certification issue.

---

*Chalmers,* dicta in one prior Supreme Court case and in one Sixth Circuit case suggest that when a retiree brings an action against his former employer for failure to pay vested retirement benefits, the retiree has a state law breach of contract claim that is not pre-empted by federal law. *See Allied Chemical & Alkali Workers, Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341; *Hazen v. Western Union Telegraph,* 518 F.2d 766, 769–70 (6th Cir.1975). In *Allied Chemical,* the Court noted that *"[u]nder established contract principles,* vested retirement

rights may not be altered without the pensioner's consent. The retiree, *moreover,* would have a federal remedy under § 301 ..." 404 U.S. at 181 n. 20, 92 S.Ct. at 398 n. 20 (emphasis added). In *Hazen,* this court in dicta interpreted the *Allied Chemical* footnote to mean that "a retired person who is no longer a member of a bargaining unit may either sue at common law under established contract principles or pursue a federal remedy under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of contract." *Hazen v. Western Union Telegraph,* 518 F.2d at 769–70.