876 F.2d 894
 132 L.R.R.M. (BNA) 2960
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERNATIONAL UNION UAW LOCAL 91, et al.,
Plaintiffs-Appellees, Cross-Appellants,
v.
PARK-OHIO INDUSTRIES, INC., Ohio Crankshaft Division of
Park-Ohio Industries, Inc., Defendants-Appellants,
Cross-Appellees.
 Nos. 88-3145, 88-3147.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1989.
 
 On APPEAL From the United States District Court for the Northern District of Ohio.
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and RICHARD F. SUHRHEINRICH, District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This case arose from a termination of health insurance benefits to former employees who, though they met the eligibility requirements for retirement during the term of a collective bargaining agreement, retired after the expiration of the agreement. Defendants appeal the district court's grant of summary judgment with respect to plaintiffs' claims of breach of the collective bargaining agreement under the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1982), and breach of fiduciary duties created by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1104 and 1106 (1982). Plaintiffs appeal the dismissal of their request for mental distress damages under both Acts.
 
 
 2
 * Plaintiffs, United Automobile Workers and its Local 91 ("the union"), have been parties to a series of collective bargaining agreements with defendants Park-Ohio Industries, Inc., and its Ohio Crankshaft Division ("Park-Ohio"). The union represents certain hourly workers employed by Park-Ohio. The most recent collective bargaining agreement between Park-Ohio and the union was effective between July 11, 1980 and July 11, 1983. Preceding its expiration, the parties attempted to negotiate a successor agreement, but, as their efforts were unsuccessful, the union began a strike. At the time this appeal was filed, a new collective bargaining agreement had not been negotiated.
 
 
 3
 During the strike, thirty-four hourly employees who met the labor agreement's criteria for early retirement during the term of the 1980-83 agreement, but who had not taken retirement as of July 11, 1983, elected to retire. This appeal concerns whether, under the terms of the collective bargaining agreement, these post-contract retirees are entitled to health insurance benefits; no dispute is raised concerning their regular pension benefits.
 
 
 4
 The "hospitalization" section of the 1980-83 agreement includes this language:
 
 
 5
 (a) The Company will continue to provide and pay the cost of the present Hospitalization, Medical-Surgical, Prescription Drug and Major Medical coverage (which includes dental benefits) for the individual employee (including family where requested) through the Blue Cross/Blue Shield in Northeast Ohio through December 31, 1980.
 
 
 6
 (b) Effective January 1, 1981 and during the life of this Agreement, the Company will provide and pay the cost of Hospitalization, Medical-Surgical, Major Dental, Prescription Drug and Major Medical services for the individual employee (including family where requested) through the Blue Cross/Blue Shield in Northeast Ohio.
 
 
 7
 .............................................................
 
 
 8
 ...................
 
 
 9
 * * *
 
 
 10
 (c) The Blue Cross/Blue Shield Program available to active employees will continue to be available to present and future retired employees (including Blue Cross/Blue Shield Medifill Benefits to those retirees so qualifying) without cost to the retiree.
 
 
 11
 .............................................................
 
 
 12
 ...................
 
 
 13
 * * *
 
 
 14
 (f) Employees actively at work on the effective date of this Agreement will remain covered. Employees not actively at work on the effective date of this Agreement and employees who are rehired after lay-off and who have retained seniority, will be covered on the first day of the month following their return to active work. Employees hired after the effective date of the Contract will be covered on the first day of the month following their 30-day probationary period. (Emphasis added.)
 
 
 15
 Application of this provision to employees who waited to retire until after the termination of the contract has been the subject of much debate, and each party has offered evidence extrinsic to the contract to support its understanding. A summary of this evidence is drawn from the opposing motions for summary judgment and other pleadings.
 
 
 16
 Prior to the expiration of the 1980-83 agreement, some members of the union became concerned that Park-Ohio intended to alter the retirement health insurance benefits and therefore asked Tom Ostromek, the local union's president, to meet with management. Ostromek, accompanied by Committeeman Joseph Kaczmarczyk, met with general plant manager James Kirkhoff. According to the union, Kirkhoff assured the two that retiree insurance benefits would not be reduced or eliminated. Ostromek subsequently posted a notice to this effect in the union hall. Park-Ohio, however, offers a different account of the meeting. It is Kirkhoff's contention that he indicated only that pensions would not be reduced, and that changes in hospitalization benefits for both active and retired employees would be proposed. Kirkhoff dictated a memorandum to his files concerning the meeting which stated that he explained to Ostromek and Kaczmarczyk that certain "niceties" might be eliminated.
 
 
 17
 During the period immediately preceding the expiration of the contract, a conversation also transpired between plaintiff Walter Kosky, an hourly employee with retirement eligibility, and Georgianna Draught, who handled medical insurance coverage for the company. Kosky claims that he asked Draught point-blank whether he would receive health insurance benefits if he retired during a post-contract strike, and that Draught indicated that he would not lose his benefits. Draught denies that she made any representations to Kosky but, rather, states that she told Kosky that "there was no guarantee that [his benefits] would be the same as what other retirees had." Further, Park-Ohio alleges that numerous hourly employees were told by Edmond Weintczak, the company's benefits manager, that it was uncertain whether health insurance benefits would be provided to them if they waited until a strike to retire and that, to be safe, retirement should be taken before the contract's expiration.
 
 
 18
 The strike ensued and hourly employees who were eligible for retirement before the collective bargaining agreement's expiration date began to retire. Health insurance coverage was provided to former employees retiring both before and after the expiration date of July 11, 1983 from July 1983 until April 1, 1984, although Park-Ohio states that it advised post-contract retirees that benefits were being provided only on a temporary basis in order that all changes in health insurance coverage could be made at one time. On April 1, 1984, the post-contract retirees' health insurance benefits were terminated to reduce the company's operating expenses, although those benefits were provided to former employees retiring before July 11, 1983, in the belief that a contractual obligation existed requiring such benefits. Since the company terminated their health insurance benefits, the union has paid for health insurance coverage for post-contract retirees.
 
 
 19
 Two of the individual plaintiffs maintain that, following the expiration of the agreement, they were told in retirement exit interviews that lifetime health insurance benefits would be provided to them, although Park-Ohio contradicts these assertions by stating that it made clear to post-contract retirees that benefits were being provided only on a temporary basis.
 
 
 20
 On June 21, 1985, the union filed this action, averring that Park-Ohio's termination of health and life insurance benefits to post-contract retirees violated the 1980-83 agreement and was compensable under the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1982). The union also asserted that, by terminating vested benefits under the collective bargaining agreement, Park-Ohio breached fiduciary duties created by ERISA, 29 U.S.C. Secs. 1104 and 1106 (1982), and that Park-Ohio had discriminated against the former employees in order to interfere with their rights under the labor agreement or ERISA, in violation of ERISA, 29 U.S.C. Sec. 1140 (1982). In addition, the union pleaded state law causes of action of promissory estoppel and intentional and/or negligent infliction of emotional distress. The complaint requested an injunction; damages adequate to establish a trust fund that would assure health and life insurance coverage for the life of the retirees; compensatory damages, including out-of-pocket medical expenses and damages for the mental distress of the retirees; punitive damages; disgorgement of profits resulting from the breach of fiduciary duty; and attorney's fees and costs.
 
 
 21
 In an opinion dated May 1, 1987, the district court ruled on several motions of the parties. The court entered summary judgment for the union on the question of whether Park-Ohio breached the collective bargaining agreement in terminating health insurance benefits to post-contract retirees, thus exposing itself to liability under 29 U.S.C. Sec. 185. The court also entered summary judgment for the union with respect to its claim under 29 U.S.C. Secs. 1104 and 1106 for breach of fiduciary duties. Park-Ohio's motion for summary judgment respecting the union's claim under 29 U.S.C. Sec. 1140 for discrimination against employees to interfere with their rights was granted. The court granted Park-Ohio's motion to dismiss the state law causes of action, determining that these claims were preempted by the Labor Management Relations Act. The court also dismissed the union's request for punitive and emotional distress damages under the ERISA claims.
 
 
 22
 Subsequently, on November 12, 1987, the district court issued an opinion resolving the remaining issues in the litigation. It was noted that the parties had settled the claims relating to life insurance benefits. The court denied the union's requests for a trust fund, and for mental distress damages under under the Labor Management Relations Act.
 
 
 23
 The union appeals the dismissal of its request for mental distress damages. Park-Ohio cross-appeals, claiming that the district court erred in granting summary judgment to the union on its claim for health insurance benefits under Sec. 185 and under Secs. 1104 and 1106 of ERISA. We affirm the district court's holding that emotional distress damages are unavailable under both Sec. 185 and Secs. 1104 and 1106 of ERISA. However, because we find that the pertinent contract language is ambiguous, we reverse the district court's grant of summary judgment to the union with respect to its breach of contract claim under Sec. 185, and, consequently, with respect to its breach of fiduciary duty claim under ERISA, as well. These liability issues will be addressed first.
 
 II
 
 24
 The Labor Management Relations Act authorizes suit in federal court, without regard to the amount in controversy or citizenship of the parties, for breach of a collective bargaining agreement. Its jurisdictional provision simply states:
 
 
 25
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 26
 29 U.S.C. Sec. 185(a) (1982). Whether the parties to a collective bargaining agreement provided for health insurance benefits for retirees that would vest upon eligibility for retirement is a question of the intent of the parties. See Policy v. Powell Pressed Steel Co., 770 F.2d 609 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). Therefore, the union's claim requires us to interpret the collective bargaining agreement, and the suit is properly before us under Sec. 185(a). On appeal, the district court's interpretation, being a conclusion of law, is not subject to the clearly erroneous standard and is freely reviewable by this court. Weimer v. Kurz-Kasch, Inc., 773 F.2d 669 (6th Cir.1985). The district court found that the parties in this case unambiguously provided that health insurance benefits would be provided to both those former employees who retired before the expiration of the contract and those who were eligible during the term of the agreement but did not retire until the contract had expired. Park-Ohio contends that the district court erred in granting summary judgment to the union after concluding that Park-Ohio's termination of benefits to post-contract retirees breached the labor agreement. We agree with Park-Ohio.
 
 
 27
 Since the Supreme Court's opinion in Textile Workers' Union v. Lincoln Mills, 353 U.S. 448 (1957), it has been settled that Sec. 185 is more than merely a jurisdictional provision; rather, it was intended that the interpretation of collective bargaining agreements under Sec. 185 be governed by substantive federal law fashioned from the policy of national labor laws. However, while state law will not govern, traditional rules of contract interpretation may be resorted to if their application is consistent with federal labor policies. Id. at 457; UAW v. Yard-Man Inc., 716 F.2d 1476 (6th Cir.1983), cert. denied, 465 U.S. 1007 (1984). In Yard-Man, this court explained:
 
 
 28
 Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretations rendered not denigrate or contradict basic principles of federal labor law.
 
 
 29
 Yard-Man, 716 F.2d at 1479-80 (citations omitted).
 
 
 30
 As in Yard-Man, the traditional rule of contract interpretation applicable in the present circumstances is the principle that before a court may consider extrinsic evidence as to the meaning of a contract provision, the pertinent language must be ambiguous. See generally Snow, Contract Interpretation: The Plain Meaning Rule in Labor Arbitration, 55 Fordham L.Rev. 681 (1987). If the language is clear and unambiguous, the words of the contract are to be given their plain and usual meaning. A matter of hornbook law, the so-called "plain meaning rule" is summarized well in American Jurisprudence:
 
 
 31
 It is commonly said that where the language of a contract is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids. The intention of the parties must be gathered from that language, and from that language alone. Stated differently, where the language of a written contract is clear and unambiguous, the contract must, unless some good reason can be assigned to show that the words used should be understood in a different sense, be taken to mean that which, on its face, it purports to mean.
 
 
 32
 17 Am.Jur.3d, Contracts, Sec. 241 (1964) (footnotes omitted).
 
 
 33
 There has been some movement recently toward more use of extrinsic sources. See, e.g., Restatement (Second) of Contracts Sec. 212 comment b (1981). And, although this court's opinion in Yard-Man refers to contextual factors, that opinion did not change the rule that bargaining history or other extrinsic aids may not be considered if contract language is not found to be ambiguous. Serrano v. Jones & Laughlin Steel Co., 790 F.2d 1279, 1288-89 (6th Cir.1986). This may be seen by tracing the origin and evolution of the phrase "the context which gave rise to its inclusion," which appears in both the Yard-Man opinion and in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960). We have pointed out that this language from the Steelworkers case does not demand consideration of bargaining history and other extrinsic evidence when the contract is clear and unambiguous. Local 783, Allied Indus. Workers v. General Elec. Co., 471 F.2d 751, 757 (6th Cir.), cert. denied, 414 U.S. 822 (1973).
 
 
 34
 The dispute before us involves interpretation of subsection (c) of the "hospitalization" portion of the health insurance portion of the agreement, which is set out above. In their motions for summary judgment and opposing briefs, the parties urged different interpretations of the words "present and future retired employee." The union contended that "future" retirees unambiguously refers to employees eligible to retire during the term of the agreement who elect to retire after its expiration. In support of its interpretation, the union presented extrinsic evidence of Ostromek's and Kaczmarczyk's meeting with Kirkhoff, Kosky's meeting with Draught, the representations made during exit interviews, and the providing of benefits for post-contract retirees until April 1984. Conversely, Park-Ohio maintained that "present and future retired employees" is unambiguous, as "present" retired employees are those already retired and "future" retired employees are those who will retire during the term of the collective bargaining agreement. Park-Ohio also marshalled extrinsic evidence in support of its interpretation, including evidence that the parties did not discuss whether retiree benefits would vest upon eligibility, that the necessity for Ostromek and Kaczmarczyk to meet with Kirkhoff shows that the parties did not intend for benefits to vest upon eligibility, and that Kirkhoff and Weintczak counseled and dissuaded employees from delaying retirement until after the collective bargaining agreement expired.
 
 
 35
 Apparently encouraged by both parties' arguments that the contract language should be interpreted as unambiguous, the district court resolved the matter on their opposing motions for summary judgment. The court found the collective bargaining agreement to unambiguously provide employees who are eligible to retire before the expiration of the agreement with vested health insurance benefits, even though some of the employees might elect to retire after the agreement's expiration. The extrinsic evidence of the parties, with respect to which the district court stated there were "obvious factual disputes," was therefore not considered, as the court found that the question could be resolved on the unambiguous contract language alone.
 
 
 36
 However, the matter was not ripe for resolution on a motion for summary judgment since, manifestly, as the arguments of the parties point out, the phrase "present and future retired employees" is susceptible of differing, yet reasonable, interpretations. The intent of the parties at the time the contract was entered into necessarily must be discerned to determine which interpretation is the correct one, and that is a question of fact. That both parties have offered plausible interpretations of the agreement drawn from the contractual language itself demonstrates that the provision is ambiguous. Neither of the two proffered interpretations is frivolous nor unreasonable on its face, and inquiry should be permitted into extrinsic circumstances. See Strauss v. Silvercup Bakers, Inc., 353 F.2d 555, 558 (2d Cir.1965). Therefore, we reverse the district court's grant of summary judgment to the union on its Sec. 185 claim for health benefits.
 
 
 37
 The district court also granted the union's motion for summary judgment with respect to its claim for health insurance benefits under ERISA on the ground that, because it had determined that a contractual obligation existed in resolving the union's Sec. 185 claim, Park-Ohio breached fiduciary duties under ERISA by terminating the benefits. Because the ERISA liability issue turns on whether a contractual obligation is found, and is therefore dependent upon the resolution of the Sec. 185 claim, we also reverse the district court's grant of summary judgment on the ERISA claim as well.
 
 III
 
 38
 The union contends that the district court erred in dismissing its claim for extracontractual damages under ERISA, 29 U.S.C. Sec. 1132. Section 1132 authorizes civil enforcement of the Act, and actions brought by participants or beneficiaries find their jurisdiction under one of the first four subsections of Sec. 1132(a).[1] In this case, the union alleges violations of Secs. 1104 and 1106, pursuant to Sec. 1132(a)(3), and it desires to enforce the "terms of the plan" pursuant to Sec. 1132(a)(1)(B).
 
 
 39
 The starting point for analysis is Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), which held that neither extracontractual compensatory damages, such as damages for emotional distress, nor punitive damages are available in an action under another section of ERISA, 29 U.S.C. Sec. 1109(a) (1982). Noting that Sec. 1109(a) establishes personal liability for breach of fiduciary duty and can be enforced civilly through Sec. 1132(a)(2), the Court read Sec. 1109 to emphasize the relationship between the fiduciary and the plan, not the beneficiary. Thus, Sec. 1109(a)'s reference to "such other equitable or remedial relief as the court may deem appropriate" is intended to provide a "catch-all" remedy for misuse of plan assets, with recovery inuring to the benefit of the plan as a whole. Russell, 473 U.S. at 140-44. The Court reasoned that its conclusion was buttressed by the absence of any provision for the recovery of extracontractual damages in Sec. 1132(a)(1)(B), the subsection authorizing a beneficiary to bring an action to enforce his rights under the plan, and by the presence of six carefully integrated civil enforcement provisions in Sec. 1132(a).
 
 
 40
 Although the Supreme Court expressly limited its opinion to consideration of Sec. 1109(a) and Sec. 1132(a)(2), several circuits have extended the reasoning of Russell to preclude extracontractual damages in cases brought under other subsections of Sec. 1132(a). See, e.g., United Steelworkers of America v. Connors Steel Co., 855 F.2d 1499 (11th Cir.1988), cert. denied sub. nom H.K. Porter Co. v. United Steel Workers of America, 109 S.Ct. 1568 (1989) (neither extracontractual compensatory nor punitive damages available under Sec. 1132(a)(3)); United States v. Gabriel, 810 F.2d 627 (7th Cir.1987) (punitive damages not available under Sec. 1132(a)(3)); Sokol v. Bernstein, 803 F.2d 532 (9th Cir.1986) (mental distress damages not available under Sec. 1132(a)(3)). This circuit, in Varhola v. Doe, 820 F.2d 809 (6th Cir.1987), ruled out punitive damages under Sec. 1132(a)(3), reasoning that because punitive damages are not ordinarily available under trust law principles, which Congress intended to incorporate into ERISA, they should not be available under Sec. 1132(a)(3).
 
 
 41
 Relying upon the Ninth Circuit's opinion in Sokol, the district court found Russell's rationale equally applicable in the present case, and went on to reason that the legislative history of ERISA would compel a finding that extracontractual damages are unavailable, as well. The union contends, however, that this is an issue that Russell expressly left open, and that the legislative history of ERISA demonstrates that the principles of the law of trust should be incorporated, including alternative remedies for a breach of trust that would meet the objective of "making a beneficiary whole."
 
 
 42
 We are unpersuaded by the union's vague reference to trust law principles. Indeed, ERISA's incorporation of the law of trusts argues against allowing extracontractual compensatory damages in actions for breach of fiduciary duties under Secs. 1132(a)(1)(B) or 1132(a)(3) of ERISA. As Varhola indicates, extracontractual damages are not ordinarily available in breach of trust cases, whether or not in some attenuated sense such damages might "make the plaintiff whole." Further, we find Russell controlling and join the other circuits which have held that the language and structure, as well as the legislative history, of Sec. 1132 prohibit the allowance of such damages.
 
 
 43
 Accordingly, we affirm the district court's holding that extracontractual compensatory damages are not available in actions under Secs. 1132(a)(1)(B) or 1132(a)(3) of ERISA.
 
 IV
 
 44
 Alternatively, the union contends that the district court erred in dismissing its claim for extracontractual compensatory damages under Sec. 185. This issue is governed by substantive federal law, although we may look for guidance to general common law principles. Yard-Man, 716 F.2d at 1487. Although the district court stated that it was not ruling that damages for mental distress are never available in actions under Sec. 185, it held that Park-Ohio's conduct in this case was not extraordinary or eggregious, and therefore do not warrant such damages. It is apparent that the district court applied a standard that is consistent with the guiding principle in this context, that mental distress damages are available in breach of contract actions only if serious emotional harm was a particularly likely result. See Restatement (Second) of Contracts Sec. 353 (1981).
 
 
 45
 Accordingly, we affirm the district court's holding that mental distress damages are not available under Sec. 185 in the present circumstances.
 
 V.
 
 46
 The judgment of the district court is affirmed in part and reversed in part, and this cause is remanded to the district court for further proceedings according to law and consistent with this opinion.
 
 
 
 *
 The Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Section 1132(a), in whole, provides:
 (a) Persons empowered to bring a civil action
 A civil action may be brought--
 (1) by a participant or beneficiary--
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the term of the plan;
 (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
 (5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
 (6) by the Secretary to collect any civil penalty under subsection (i) of this section.
 29 U.S.C. Sec. 1132(a) (1987).