54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 148 INVESTMENT GROUP, INC., Plaintiff-Appellee,
v.
ELVIS PRESLEY ENTERPRISES, INC., Defendant-Appellant.
 No. 93-6444.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1995.
 
 Before: JONES, CONTIE, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Elvis Presley Enterprises appeals the district court's determination of damages in this action. We affirm.
 
 I.
 
 2
 On August 5, 1992, plaintiff-appellee 148 Investment Group, Inc. ("148 Investment Group"), initiated this action against defendant-appellant Elvis Presley Enterprises, Inc. ("EPE"), alleging two causes of action: breach of contract and conversion. The events that culminated in this lawsuit follow.
 
 
 3
 Following Elvis Presley's death, Philip Brodnax III purchased a gold-leafed Kimball Grand Piano ("Piano") owned by Presley. When EPE opened Presley's home, Graceland, to the public in 1982, Brodnax agreed to lease the Piano to EPE for one dollar per month.[1] Brodnax, however, retained certain rights to the Piano:
 
 
 4
 Lessee [EPE] shall have the right to photograph the Piano and otherwise promote and publicize the exhibition of the Piano without limitation. However, Lessee shall not sell photographs, souvenirs, miniatures, or any other commercial items with regard to the Piano without the express consent and written agreement of Lessor [Brodnax]. All sales of such commercial items shall be under the sole and exclusive management and control of Lessee.
 
 
 5
 1982 Lease at 3.
 
 
 6
 In March 1990, Brodnax learned that Graceland's gift shops were selling postcards, souvenirs and jewelry depicting the Piano. Brodnax immediately informed EPE that it had breached the lease by selling these items without his consent. After Brodnax and EPE stipulated that the net profits derived from the unauthorized sales totaled $109,893.70, Brodnax sold the Piano to 148 Investment Group and assigned to it any cause of action that he had against EPE arising from the unauthorized sales. 148 Investment Group subsequently removed the Piano from Graceland and initiated this action.[2]
 
 
 7
 After trial, the district court (sitting without a jury) awarded 148 Investment Group $109,893.70 plus pre-judgment interest ($28,897.54). EPE timely appealed.
 
 II.
 
 8
 EPE asserts that 148 Investment Group should receive a reasonable share of the profits, not all of the profits, realized from the sale of Piano-related merchandise.
 
 
 9
 Pursuant to established Tennessee law, damages in a breach of contract action should place the injured party, as nearly as possible, in the position that it would have been in had the contract been performed. Grantham & Mann, Inc. v. American Safety Prods., Inc., 831 F.2d 596 (6th Cir. 1987); Marquette Cement Mfg. Co. v. Louisville & Nashville R.R., 281 F. Supp. 944 (E.D. Tenn. 1967), aff'd., 406 F.2d 731 (6th Cir. 1969) (per curiam); Wilhite v. Brownsville Concrete Co., 798 S.W.2d 772 (Tenn. App. 1990). Accordingly, the usual measure of damages for a breach of contract is the value of the promised performance. Inland Equip. Co. v. Tennessee Foundry & Mach. Co., 241 S.W.2d 564, 567 (Tenn. 1951); Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 298 S.W.2d 788, 793 (Tenn. App. 1956).
 
 
 10
 When reviewing a district court's interpretation of a contract, we are not limited to the clearly erroneous standard of review. Davis v. Sears, Roebuck & Co., 873 F.2d 888, 893 (6th Cir. 1989). Instead, the interpretation and construction of a written contract are matters of law allowing de novo review. Weimer v. Kurz-Kasch, Inc., 773 F.2d 669, 671 (6th Cir. 1985).
 
 
 11
 In its oral ruling, the district court held:
 
 
 12
 What Mr. Brodnax lost here was not the right to negotiate. What he lost was what he had bargained for, which was the right to say no, lost the prohibition he had.
 
 
 13
 Certainly, he contemplated if permission had been requested, the parties would have negotiated some sort of agreement, and that in all likelihood would have been a royalty agreement. I'm sure that would be what Elvis Presley Enterprises would contemplate, too, but Elvis Presley Enterprises can't fail to ask permission and then come in and expect the Court to craft relief that is based on the agreement it would have gotten if it had negotiated for something it never negotiated for....
 
 
 14
 Joint Appendix at 138. See also Id. at 92 ("I can't write terms for these parties they didn't agree to. I can't decide what the royalty agreement would have been if they had asked and if they had negotiated.... Judges don't write contracts for parties.").
 
 
 15
 Pursuant to the lease agreements, EPE had to obtain Brodnax's permission before marketing products depicting the Piano. EPE failed to do so. Though Brodnax admitted that, if EPE had sought his consent, he and EPE would have negotiated an agreement that, in all likelihood, would have been a royalty agreement, the district court properly concluded that EPE's conduct deprived Brodnax of his bargained-for right to refuse consent. Accordingly, the district court properly determined the damages attributable to EPE's breach.[3]
 
 
 16
 We therefore AFFIRM.
 
 
 
 [1]
 When EPE and Brodnax renewed the 1982 lease in 1987, the lease payments were increased to $1,500 per month
 
 
 [2]
 On appeal, EPE does not contest 148 Investment Group's standing to bring this action
 
 
 [3]
 Though EPE argues that the district court "mistakenly relied for purposes of analogy upon the theories of conversion and unjust enrichment in an effort to rationalize the disgorgement of profits," Appellant's Reply Brief at 8, the district court properly applied Tennessee's breach of contract law to this action and reached the correct result